5 So.2d 800

**BULLOCK COUNTY et al. v. SHERLOCK, Highway Director.**

**3 Div. 365.**

Supreme Court of Alabama.

Jan. 22, 1942.

Lawrence K. Andrews, of Union Springs, for appellants.

Thos. S. Lawson, Atty. Gen., and Silas
C. Garrett, III, Asst. Atty. Gen., for
appellee.

Edw. B. Crosland, of Montgomery, for Division of Local Finance of State Department of Finance, amicus curiae.

BOULDIN, Justice.

The appeal is to review a decree rendered in a proceeding for declaratory judgment.

By a contract entered into between the State of Alabama, through its Highway Director, and Bullock County, through its governing body, approved by the Governor, March 3, 1939, the State undertook to improve and place a bituminous surface treatment on four sections of public road in Bullock County. Each section was specially designated with its mileage, all aggregating 43.765 miles. The county undertook to contribute $2,500 per mile, in materials or cash, or both. Upon the completion of each section, the county was to immediately pay in cash the amount due for such mileage, less any amount theretofore contributed in materials. One section of road was completed and the county paid in materials and cash the sum due thereon, namely, $14,960. The state then proceeded with the improvement of a second section of road, and at the time of the filing of the petition in this cause, November 4, 1941, had done about three-fourths of the work on this section.

It developed that the county has no materials, no funds in hand, and will have no funds from available sources of revenue to meet its contractual obligation for the section of road now under construction, nor for those whose construction has not begun. Unless the county can finance its obligations by funding the same through the issuance of interest-bearing time warrants pursuant to some statutory power conferred upon the county, it will be unable to meet its obligations under the contract. The county is ready and willing to so fund and finance its undertaking, if empowered so to do; but, on information and belief, denies its lawful authority and power in the premises.

In this situation the Highway Director filed his petition, making the county and the members of its governing body parties respondent, alleging the foregoing state of facts, and praying for a declaratory judgment declaring the rights, status and legal relations of the parties with respect to the power and authority of the county touching several matters, specified in paragraphs a, b, c, d, e, f, g, h, i, j, which appear in the report of the case.

The answer admitted the facts alleged, but denied, on information and belief, the authority of the county to finance its undertaking by any of the methods specified; and joined in asking a declaratory judgment. The trial court held a justiciable issue was presented, and rendered a declaratory judgment dealing with the several inquiries seriatim in paragraphs numbered "a" to "i" inclusive, which also appear in the report of the case.

A question is raised as to the validity of the contract entered into between the State and the County. If void, no obligation can arise to be funded. The plenary power of the county to enter into a contract to cooperate in construction of highways by a contribution to the cost, as stipulated in this contract, is not debatable, and is not denied. Isbell v. Shelby County, 235 Ala. 571, 180 So. 567.

The general statute of long standing conferring general powers on the county governing body in road matters, now found in Tit. 23, § 43, Code of 1940, concludes: "But no contract for the construction or repair of any public roads, bridge or bridges shall be made where the payment of the contract price for such work shall extend over a period of more than ten years."

This provision, it is argued, inhibits the contract here involved because the period for completion of these sections of highway by the state is not limited to ten years, or less; hence, the payments on such contract may extend beyond ten years.

The point is not well taken.

The contract stipulates for no payments on the contract price over a peri-

od of more than ten years. No period is stipulated for the completion of the entire mileage. In such case, the law defines the contract to mean within a reasonable time. The quoted provision of the statute may be said to put a limit on such reasonable time, and so writes into the contract an obligation of the state to complete the project, so that stipulated payments shall not extend over more than ten years. Parties are presumed to intend a valid contract. A contract will be construed to sustain its validity, if reasonably subject to such construction. Montgomery Enterprises et al. v. Empire Theater Co., 204 Ala. 566, 86 So. 880, 19 A.L.R. 987; 17 C. J.S., Contracts, § 318, pp. 735, 736, § 330, pp. 783, 784.

The most important inquiries arise under subdivision "a" of the petition and the decree in response thereto, namely, the power of the county to fund the obligation of the county to arise upon the completion of each section of road by the issuance of county warrants under Tit. 12, § 81 of the Code of 1940. The pertinent provisions of this section read:

"The * * * governing body of any county in this state, which county had outstanding, on the date of the adoption of this Code indebtedness evidenced by valid warrants, or other evidence of indebtedness, or *had theretofore obligated or committed such county to pay, wholly or partially, the cost of erection, construction or improvement of any public bridges or roads, and* for which *there is no money available at that time,* shall *fund or refund or finance such indebtedness, obligation or commitment* (* * * by the issuance of funding or refunding warrants of said county), payable out of the specific fund out of which the original indebtedness, obligation or *commitment* arose, originated or accrued," &c. We have italicized the provisions directly applicable here.

[redacted] Appellant makes the point that the contract here presented named no specific fund out of which payment shall be made, and argues this statute is inapplicable for that reason. We think this too restricted a view of the statute. It looks to a funding or refunding of all outstanding indebtedness evidenced by valid warrants, or other evidence, as well as demands to accrue under commitments for road construction by contract entered into prior to the effective date of the New Code. The occasion for such funding or refunding is that no money is or will be available to meet the demand when pay day arrives. Under the laws governing claims against counties, and the allocation of funds to meet them, it may be well said every lawful claim is primarily a demand against some fund charged with its payment. A special Road and Bridge Fund for counties is provided for by our constitution as well as statutes.

Section 215 of the constitution looks to a levy of 2½ mills special ad valorem taxes for that exclusive purpose. The 2 cent gallonage tax on motor fuels commonly called the gasoline tax, levied under Tit. 51, § 647, Code of 1940, and allocated to counties under § 655 are devoted exclusively to such purpose, and it is a misdemeanor to expend same in any other manner. Only a surplus of the General Fund of the county can be transferred from time to time to the Road Fund. Tit. 23, § 47, Code of 1940; Rhodes v. Marengo County Bank, 205 Ala. 667, 88 So. 850.

[redacted] The contributions to be paid by Bullock County to the State under the commitments here presented are payable from the Road and Bridge Funds of the County, and the funding warrants to be issued under Tit. 12, § 81, supra, should be made payable from such funds, or some portion thereof specially pledged to their payment.

The further point is made that § 81, supra, cannot be made available because the Road and Bridge Funds, including the Gasoline Tax Funds, are by the New Code, brought under the Financial Control Act, Tit. 12, §§ 73 to 91, Code of 1940. This statute derives from the act of 1935, General Acts 1935, p. 803. Its purpose was defined in Section 2, namely, to vest in the county governing body "more efficient power and control over all public funds that may now or hereafter be under their management and control; and to limit their powers and authority to incur obligations and to approve and pay claims for current operating expenses in any fiscal year to the income of such year available for such purposes. And to authorize the refunding of outstanding general obligations, other than bonded indebtedness, so that the provisions of this Act may be put into effective operation." By section 9 of the act it was made the duty of the county governing body "to refund all warrants, which are unpaid and past due at the time this Act goes into effect, and for which there

is no money available at that time." Gen. Acts 1935, p. 806.

An Act, original in form, approved April 21, 1936, Acts Extra Session 1936, p. 217, provided: "The * * * governing body of any county in this State, which county had outstanding on October 1, 1935, indebtedness evidenced by valid warrants or other evidences of indebtedness, may fund or refund said indebtedness by the issuance of funding or refunding warrants of said county." ·

This act extended the funding or refunding authority to indebtedness evidenced by "other evidences" than "warrants," as in Section 9 of the Act of 1935, supra.

An Act approved January 26, 1937, Acts Extra Session 1936-7, p. 28, provided: "The * * * governing body of any county in this State, which county had outstanding on October 1, 1935, indebtedness evidenced by valid warrants, or other evidences of indebtedness, or had theretofore obligated or committed such county to pay, wholly or partially, the cost of erection, construction or improvement of any public bridges or roads, may fund or refund or finance such indebtedness, obligation of commitment by the issuance of funding or refunding warrants."

This act, it will be observed further extended the funding or refunding authority to cover commitments prior to October 1, 1935, to pay for road construction, &c., in whole or in part.

These two acts, while original in form, were amendatory of Section 9 of the original Financial Control Act, supra. The maximum amount of the warrants, the maximum instalment period, and the maximum interest rate were the same in all three acts.

Thus the statutes stood until the Code of 1940 became effective. This Code, by Section 81, Tit. 12, supra, wrote into the Financial Control Statutes the Act of 1936-7, in place of Section 9 of the original act and with further amendments. The funding authority was extended to include warrants, other indebtedness outstanding when the New Code became effective, May 31, 1941; also commitments to pay for road construction in whole or in part, under contracts made prior to the same date.

The obligations of Bullock County here presented are directly within the terms of § 81, a part of the Financial Control Statute.

The fact that the New Code brings the Road and Bridge Fund within the budgeting provisions of the Financial Control Act does not strike down provisions of the same act dealing with outstanding obligations against said fund. No financial control plan looking to putting the county on a cash basis as regards current operating expenses would be workable without taking note of fixed charges payable from the revenues from year to year. Sections 75, 86 and 87 of the Financial Control Act deal with the items to enter into the budget.

There was no error in subdivision "a" of the decree of the trial court.

Neither was there error in subdivision "b" of the decree.

The legal authority of a county, to enter into contracts for the erection of public buildings, calling for outlays in excess of current revenues, and to finance such project by the issuance of interest bearing time warrants, payable on an instalment basis, and to pledge for their payment the proceeds of a special levy of taxes under Section 215 of the constitution has been long settled in our decisions. Board of Revenue of Shelby County v. Farson, Son & Co., 197 Ala. 375, 72 So. 613, L.R.A. 1918B, 881; Littlejohn v. Littlejohn, County Treasurer, 195 Ala. 614, 71 So. 448; Talley et al. v. Commissioners' Court of Jackson County, 175 Ala. 644, 39 So. 167; Southern Ry. Co. v. Cherokee County, 144 Ala. 579, 42 So. 66; Matkin et al. v. Marengo County et al., 137 Ala. 155, 34 So. 171.

It is equally well settled that under the statute prior to the Code of 1940, the county, under its plenary contracting powers with reference to Public Roads and Bridges, was authorized to enter into construction contracts to be financed by issuance of interest-bearing warrants secured by a pledge of the funds derived from gasoline taxes. If desirable, the warrants could be issued payable solely from this excise tax fund, without creating a debt of the county within Section 224 of the constitution. Isbell v. Shelby County, supra; Lyon v. Shelby County, 235 Ala. 69, 177 So. 306; Herbert v. Perry et al., 235 Ala. 71, 177 So. 561; Burleson v. Court of County Com'rs. of Marion County, 235 Ala. 576, 180 So. 572; Dodson v. Beaird, 237 Ala. 587, 187 So. 862.

It is unnecessary to here review the holdings in these cases. Suffice to say, the reenactment of these statutes by incorporation in the New Code along with the Financial Control Act, statutes so vital to the road program of the state and counties, is sufficient evidence that the one does not repeal the other, but all are to be construed together to effectuate the legislative intent.

The declaration in subdivision "b" of the decree: "But only one-third of said funds may be pledged to the payment of the same," is in harmony with Herbert v. Perry, supra. The statutes there considered have been codified as § 647, Tit. 51, Code of 1940, saying: "However, the governing body of each county in Alabama is authorized to expend an amount not to exceed one-third of the total amount of such revenue that may be received by such county in the payment of any debt that may have been incurred by such county for the construction or maintenance of roads or bridges."

That this limitation, designed to conserve two-thirds for current or future operations, applies to obligations incurred under a contract antedating the New Code, as here, we think evident.

We are asked to decide whether this limit of one-third applies to pledges of the gasoline tax fund under new construction contracts entered into since the effective date of the New Code. This question is not within the justiciable issue presented by the facts of this case. Declaratory Judgments cannot deal with abstract questions of law.

We merely announce the law governing the proposed issue of funding warrants under the facts of the instant case. Whether any warrants issued by counties before the effective date of the New Code and now outstanding are within the law thus announced is not for decision, and not considered; nor is there any consideration of the validating provisions of the several statutes.

Title 12, § 81, supra, is the governing statute in this case.

The maximum instalment period is twenty years. It is inapt to say warrants identical in substance, except limited to an instalment period of ten years, may be issued under the general statute conferring plenary powers on the county governing body in the construction and maintenance of roads and bridges. Tit. 23, § 43, Code of 1940. Such statute does not define the limits in amount, or in the rate of interest of such funding warrants. As to these details § 81 must be followed. The proceeds of temporary loans, in anticipation of the collection of taxes, negotiated under Tit. 12, § 124, et seq., can be used only for purposes for which general funds of the county may be used. This statute looks to a reduction of such borrowings from year to year. See, also, Ramage, Parks & Co. v. Folmar, County Treasurer et al., 219 Ala. 142, 121 So. 504.

It is contemplated that funding warrants under § 81, supra, payable from gasoline funds, shall be paid from such funds when due; and that such sums shall be set apart in advance as may be necessary to meet them.

The long instalment period allowable is designed to provide such easy payment plan as will assure the county as well as the purchaser of warrants that one-third of the gasoline taxes, will take care of them when due.

No arbitrary rule is prescribed as to when funds shall be accumulated for the purpose. This is to be worked out in the particular case. If, for instance, warrants are issued on an instalment basis of many years, not exceeding twenty, it would not be necessary to set aside funds from the date of issuance of the warrants, and hold unused sufficient funds to meet remote instalments.

So, the one-third limit prescribed may be one-third of the monthly receipts of gasoline taxes when the time arrives to accumulate necessary funds to meet maturing warrants including interest, from year to year.

To give expression to these views, the judgment or decree of the trial court will be modified by striking all the subdivisions thereof save subdivisions "a" and "b".

As so modified, the same is affirmed.

GARDNER, C. J., FOSTER, and LIVINGSTON, JJ., concur.