Jack Stanislaw, J.
The motion is for a preliminary injunction to enjoin defendant from removing or demolishing a temporary air-supported pool dome erected on plaintiff’s premises and from revoking the building permit issued by defendant, which authorized the construction.
Plaintiff owns and operates a large outdoor swimming pool, with cabanas, dressing room, shower and eating facilities, open to its club members and their families. It is located on a parcel of land, approximately 300 by 300 feet. Adjacent thereto are other parcels used by plaintiff for off-street parking, which are not here in dispute.
The first 150 feet, in depth, of the subject parcel is zoned General Business, under the terms of the Building Zone Ordinance of the Town of Huntington. About six years ago, application was made and permission granted by dejfendant’s Zoning Board of Appeals, extending the depth of the business use for the balance of the 150 feet of the property in question, to allow the construction and use of plaintiff’s pool and related recreational facilities.
In the fall of 1967, plaintiff investigated and was advised of the feasibility of constructing a removable air-supported dome over the pool, so that it could be enclosed and utilized on a year-round basis. Thereafter, in January of 1968, plaintiff applied for a building permit to erect such a structure. The application was referred by defendant’s Building Department to the Engineering Department and finally to the Town Board. *717 Numerous changes in the plans were proposed and complied with. The application was ultimately heard at a regular meeting of the Town Board on February 13, 1968. At the hearing, plaintiff was advised that the Board had not yet checked the legality of the proposed structure. The board, however, agreed to issue a temporary permit, pending a review of the applicable law, provided plaintiff would execute an agreement affording defendant the right to revoke the permit and remove the pool dome at any time after March 20,1968. Such an agreement was executed on February 27, 1968 and, on the same day, plaintiff paid the necessary filing fees and its application for the building permit was approved.
Several months prior to the February 13, 1968 hearing, plaintiff had numerous discussions with the Town Board with respect to the proposed structure and, although no formal letter or document had been executed at that time, plaintiff was led to believe that there would be no major objection to the contemplated structure and that the building permit would be issued as a matter of course. As a result, plaintiff entered into a contract for the manufacture of a plastic pool dome, prior to the time application was made for the subject building permit.
After the permit was issued, plaintiff commenced construction at the premises in preparation for the installation. Concrete footings were poured to anchor the dome, which was then delivered and erected at the premises. The interior was finished with electrical work and a heating unit. In order to utilize the accessory facilities in conjunction with the covered pool, which required an investment of approximately $50,000, plaintiff made application for and was granted a separate building permit to enlarge and heat the adjacent cabanas. That work is in the process of completion, at an additional cost to plaintiff of $20,000.
Without further notice to plaintiff, on March 19, 1968 the Town Board adopted a resolution directing removal of the dome by 5:00 p.m. on March 20, 1968. Plaintiff was then advised that unless it complies with the resolution, the dome will be forcefully removed by defendant. On the morning of March 21, 1968, defendant commenced such removal, but was enjoined by a temporary restraining order, signed and served later that day.
Oral argument on the instant application for a temporary injunction and for the continuation of the restraining order was heard before this court on March 22, 1968, at which time counsel for the respective parties stipulated that there is no dispute as to the facts alleged at the argument and in the complaint and affidavits. The court then directed that the restrain *718 ing order shall remain in effect, pending the disposition of this motion. The sole issue in dispute at this time is the legal effect of the building permit, approved on February 29, 4968, and the agreement entered into between the parties on the same date.
Neither the restraining order nor the granting of a temporary injunction amounts to a determination of the ultimate issues of the pending action. They serve merely to hold the matter in status quo until opportunity is afforded to decide the case on the merits (Weisner v. 791 Park Ave. Corp., 7 A L 2d 75). To be entitled to such relief, the moving party must establish a clear legal right thereto, based upon undisputed facts (Pine Hill-Kingston Bus Corp. v. Davis, 225 App. Div. 482). But where, as in this case, denial of the temporary injunction would, in effect, amount to a dismissal of the action, because the relief requested would then be academic, the application should not be denied if, on the face of the complaint and moving papers, there is prima facie some hind of a cause of action stated against the defendant (Weisner v. 791 Park Ave. Corp., 7 A D 2d 75, revg. 42 Misc 2d 774, supra). We must, therefore, view the pleadings, affidavits and exhibits in that frame of reference.
Let us first examine the building permit. On the face of the document it states, in part, that it is for the building of a ‘ ‘ temporary structure ” for a ” pool enclosure ” at an estimated cost of $50,000. The import of the term 11 temporary ”, used in describing the construction, is synonymous with the term ” removable ” in that the plastic dome which covers the pool is capable of being tahen down during the summer.months and put up again in the fall, similar to an outdoor awning or storm windows and screens. It does not imply a ” temporary structure ’ ’ in the sense that the construction will be demolished at the conclusion of a fixed period of time. Obviously, that was not the intention of plaintiff, since the project involves an investment of some $70,000. Plaintiff’s intention to construct a dome which would be removable, but used permanently, on a seasonal basis, was made very clear and fnlly understood by defendant from the inception. The building permit itself is described as ‘ ‘ temporary ’ ’, in that it covers the period of February 20 to March 20. The import of the term “ temporary ”, as used in that sense, implies that the period of construction is limited to one month only. We find no definition'for a temporary building permit in the Town Law, but clearly, it neither requires nor implies that the new construction completed pursuant to the permit shall thereafter be demolished or removed. A f ‘ temporary building permit ” is not to be confused with a “ temporary use permit”. The latter authorizes a use which would *719 otherwise be proscribed by an existing zoning ordinance (see Anderson, Zoning Law and Practice in New York State, § 19.05, pp. 617-618). It is frequently referred to as a conditional or special use permit, and may impose the requirement that the nonconforming use shall expire at the termination of a given period (Matter of New York Life Ins. Co. v. Foley, 13 A D 2d 768). But the attention of the court has not been called to any provision of the ordinance affecting the subject premises which prohibits the utilization of plaintiff’s land in the manner requested.
What then, is the effect of a temporary building permit? In Riverdale Community Planning Assn. v. Crinnion (133 N. Y. S. 2d 706) a builder obtained a permit, authorized under the Administrative Code of the City of New York, which was limited only to the construction of the foundation of a proposed building, pending the issuance of a permit to complete the structure, upon final approval of all plans. Shortly thereafter, the town amended its Zoning Ordinance, so that the contemplated building no longer conformed with the town law. For that reason, the permit was held properly revoked and, because the work done prior to the effective date of the amendment was insufficient to entitle the builder to complete the project as a nonconforming use under the common-law doctrine of “ vested rights ”, no further construction was allowed.
A similar temporary permit was the subject of consideration in Matter of Colonial Beacon Oil Co. v. Finn (245 App. Div. 459, 460, affd. 270 N. Y. 591). Under the local city ordinance, in that case “ the superintendent [of buildings] may grant a temporary permit for the erection of any part of a structure where plans have been presented for that portion of the same before the entire plans have been submitted ”. A builder in that city obtained such a permit, but two weeks later it was revoked by the Superintendent, claiming the proposed construction constituted a fire hazard. Since further prosecution of the work was then forbidden, the builder moved for a peremptory order of mandamus, directing the issuance of a permit to continue the improvement. Reversing an order of the court below, the Appellate Division held that since the plans and specifications filed by the builder to obtain the permit, admittedly, showed noncompliance with certain requirements of the zoning ordinance affecting the property, the permit was properly revoked. Under the holding of the Appellate Division and of the Court of Appeals, in that case, the permit could not have been revoked at the whim of the Building Superintendent, or merely because it was described as “temporary”. The only justification for *720 revocation of a building permit, whether denominated temporary or otherwise, is if the permit was illegal when issued, because the construction authorized thereunder violates an existing ordinance, or in the event of fraud or false representation by the applicant in obtaining it (Matter of Rosenbush v. Keller, 247 App. Div. 748, affd. 271 N. Y. 282).
Neither fraud nor false representation is claimed in this case, but defendant argues that the subject permit was properly revoked, for the following reasons: (1) the agreement of February 29, 1968 unequivocally provides therefor; and (2) the construction is in violation of the town law. With respect to the latter contention, defendant claims that the State Building Code, adopted by the town, effective September 1, 1967, does not provide for the type of structure which plaintiff has erected; and that the dome, which is 44 feet at its peak, exceeds the permissible height of the Zoning Ordinance of the town by approximately 10 feet. Defendant, however, has failed to indicate any provision of that code which prohibits such a structure. Plaintiff points out that the Building Code in question is a performance code which prescribes standards of construction and that the subject structure meets and exceeds every performance standard of that code. This fact has not been denied by defendant. With respect to the issue of height, plaintiff points out that the only provision respecting height of structures, in a General Business District of the ordinance affecting the premises, is that no building shall exceed four stories; and, further, that since section 6 of article VI of the ordinance states, in part: “ In case of such a building over forty (40) feet in height ” certain setback conditions shall be imposed, it is apparent that a structure 44 feet high is permissible. This, too, is not denied by defendant.
It is well settled that zoning ordinance restrictions on the use of private property, being in derogation of the common-law right of the owner of realty to use his land as he pleases, must be strictly construed against the legislative body which adopted the ordinance and its provisions should not be extended, by implication, against the land owner (Matter of Monument Garage Corp. v. Levy, 266 N. Y. 339; Matter of De Marco v. Fitzgerald, 20 Misc 2d 457). Thus, based on the facts, as agreed for the purpose of this motion, we find no rational basis for defendant’s contention that the structure is violative of any existing ordinance.
Let us now consider the agreement, by which defendant claims it has an absolute right to remove the structure regardless of its compliance with the zoning regulations. We must, however, *721 view the agreement in light of the relationship of the parties and the circumstances surrounding its execution (Atwater & Co. v. Panama R.R. Co., 246 N. Y. 519). Attached to the opposing affidavit is a copy of the transcript of the hearing held before the Town Board, on plaintiff’s application for the permit. The intent of the agreement and the reason for requesting it are expressed by defendant’s counsel, at pages 129 and 130 of the transcript, as follows: “ Mr. James, the Board has not had the opportunity to check the legality of this structure as to whether it is in accordance with the zoning ordinance or not. The Board has not had the opportunity to review all the conditions that we would want to set down in connection with this ordinance, including additional setback requirements, including any fencing, including buffer zones or screening. We have not had the chance to look at this thing and to scrutinize it. Now, if you are willing to agree now, and to execute an agreement in writing that we can impose further conditions after this structure is erected, the Board is amenable to allowing you to having a temporary permit so long as we can impose these added conditions and so long as we can ascertain the legality of this structure, as to whether it is in accordance with our zoning ordinance, and so long as you will give me a written agreement that upon Monday morning, March 21, we can remove or demolish this structure if we find that it would not ordinarily pass this resolution. In that case, the Board is amenable to giving you a temporary permit for that one month period of time.”
Clearly, plaintiff took a calculated risk in proceeding with the construction before a determination was made as to whether the construction, authorized by the permit, violates an existing ordinance. If the structure did violate such an ordinance, the permit was illegally issued and must be revoked. Moreover, no vested rights may be acquired under an illegal permit (Matter of Rosenbush v. Keller, 274 App. Div. 748, affd. 271 N. Y. 282, supra, Matter of Colonial Beacon Oil Co. v. Finn, 245 App. Div. 459, supra). But plaintiff’s risk was no greater by reason of his execution of the February 29, 1968 agreement, since the expressed intent and very basis of that agreement was to afford defendant sufficient time to check the applicable law and, if it is thereafter determined that the structure violates such law, the permit must be revoked and the structure removed without cost or liability to the town and without further proceedings.
The terms of the agreement were demanded and dictated by defendant. In such a case, questions relating to its construe *722 tion should be resolved in favor of the plaintiff. The document must be construed so as to be reasonable and the intent deemed to have been honest and honorable (Lamborn v. National Park Bank, 212 App. Div. 25, affd. 240 N. Y. 520). It would have been grossly unjust and misleading for the town to have intended that the agreement afforded it the absolute right to unilaterally revoke the permit and remove and demolish the structure, at will, even if it violates no existing ordinance. This would be so, regardless of the extent of plaintiff’s investment, made in reliance on the permit. We are not concerned here with a vested right to a nonconforming use, but rather to the right to continue a permissible use under an existing ordinance.
Ordinarily, the intent of the parties is to be determined from the four corners of the contract. In this case, the transcript of the February 13, 1968 hearing, including the above-quoted statements, must be deemed part and parcel of the subject agreement. It is fundamental, that “ a contract is to be interpreted in accordance with the intention of the contracting parties ” (Kasen v. Morrell, 6 A D 2d 816). It is the parties’ intent which is the essence of every agreement and the principal factor in determining their relative rights and obligations (Fox Film Corp. v. Springer, 273 N. Y. 434). We cannot ignore the apparent substantial intent as well as the subject matter (Manson v. Curtis, 223 N. Y. 313) and expressed purpose of the subject agreement (Atwater & Co. v. Panama R.R. Co., 246 N. Y. 519, supra; Aron v. Gillman, 309 N. Y. 157). Nor can it be presumed that the parties intended that their agreement shall be meaningless or unreasonable.
Since there is no claim of fraud or misrepresentation and defendant has failed to show that the existing structure is violative of any applicable town ordinance, there is no justification, by reason of the agreement or otherwise, for revoking the permit or removing the structure (De Marco v. Fitzgerald, 20 Misc 2d 457, supra). The motion, therefore, is granted.
The parties, however, are entitled to an early trial (Hoppman v. Riverview Equities Corp., 16 A D 2d 631) and may provide therefor in the proposed order, to be settled on notice.