Otis W. GREER et al. (F–64–69), Appellants,

v.

KENTUCKY HEALTH AND GERIATRIC AUTHORITY et al., Appellees.

John B. BRECKINRIDGE, Attorney General of the Commonwealth of Kentucky (F–50–69), Appellant,

v.

Otis W. GREER et al., Appellees.

Court of Appeals of Kentucky.

May 14, 1971.

John B. Breckinridge, Atty. Gen., Henri L. Mangeot, Asst. Atty. Gen., William O. Gilbreath, William Bryan Martin, Asst. Attys. Gen., Frankfort, for John B. Breckinridge, Attorney General of Commonwealth of Kentucky.

Robert M. Short, Owensboro, for Otis W. Greer.

John A. Nold, Skaggs, Hays & Reed, Louisville, for Kentucky Health and Geriatric Authority.

William E. Rummage, John W. Beard, Owensboro, for American Convalescent Centers, Inc.

DAVIS, Commissioner.

Otis W. Greer initiated this litigation by filing a class action (CR 23) against Kentucky Health and Geriatric Authority (Authority) and American Convalescent Centers, Inc., (the Corporation), seeking a declaration of rights and injunctive relief. The suit asked a declaration that statutes KRS 216.800 through KRS 216.853 (Chapter 132; 1968 Acts of General Assembly) are unconstitutional, and sought a permanent injunction prohibiting the Authority and Corporation from proceeding under an agreement looking toward implementation of the provisions of the statutes mentioned.

The Attorney General of the Commonwealth was permitted to withdraw as counsel for the Authority and to intervene to defend the constitutionality of the questioned statutes and to challenge the provisions of the agreement between the Authority and the Corporation.

The trial court declared the statutory provisions to be constitutional and also declared that the agreement between the Authority and the Corporation validly established an appropriate plan of procedure under the statutes. The trial court specifically declared that the Authority may issue revenue bonds "in accordance with the terms of the agreement and of KRS 216.-800 through KRS 216.853." Greer and the Attorney General took separate appeals, which have been consolidated and will be disposed of in this opinion.

Greer's first attack on the constitutionality of Chapter 132, 1968 Acts of General Assembly (KRS 216.800 through KRS 216.853), asserts a claimed defect in the title of the Act. The title of the Act, enacted as Senate Bill 404, 1968, provided:

"AN ACT relating to the establishment of a Kentucky Health and Geriatric Authority, providing for the issuance of bonds thereby."

It is Greer's contention that the title offends Section 51 of the Kentucky Constitution which provides in pertinent part:

"No law enacted by the general assembly shall relate to more than one subject, and that shall be expressed in the title, * * *."

The basis of Greer's argument appears to be that the title is incomplete since it refers only to the "establishment" of the Au-

thority and to the issuance of revenue bonds by it. The argument is unsound. The title sufficiently complied with Section 51 of the Kentucky Constitution. All of the provisions of the Act, now compiled as KRS 216.800 through KRS 216.853, are germane to and reasonably embraced within the general subject expressed in the title —namely, the establishment of a Kentucky Health and Geriatric Authority. The enumeration of the specific authority to issue revenue bonds did not make it necessary to catalog each and every power and function prescribed for the Authority. Board of Trustees of P. & F.R.F. v. City of Paducah, Ky., 333 S.W.2d 515; Duke v. Boyd County, 225 Ky. 112, 7 S.W.2d 839. The trial court correctly declared that the Act complied with Section 51 of the Kentucky Constitution.

■ A second asserted constitutional infirmity is the claimed violation of Section 177 of the Kentucky Constitution by reason of KRS 216.845, particularly subsection (1) (a) thereof, which states:

"(1) There is hereby created a Kentucky Health and Geriatric Authority revenue bond guarantee fund which shall be deposited in the State Treasury and which shall consist of the following:

(a) Appropriations made by the General Assembly."

After noting other sources for augmentation of the bond guarantee fund, KRS 216.845 directs, in part:

"(2) * * * In the event of the default or threat of default on the payment of principal of or interest on any of the bonds of the authority, the authority shall pay over such sums contained in the bond guarantee fund as are necessary to pay the principal of and interest on such bonds as are in default or threat of default to the extent of the bond guarantee fund."

Greer reasons that since the Authority may lease facilities to a private corporation, with an option permitting transfer of title to the corporation when all revenue bonds are paid, the quoted provision of the statute affords the opportunity for lending or giving the Commonwealth's credit to a private corporation.

■ ■ It is settled that the Commonwealth may appropriate tax funds for the construction of a nonprofit hospital not owned by the state or a political subdivision of it, even though the conduit for the funds is a private agency. Kentucky Bldg. Comm'n v. Effron, 310 Ky. 355, 220 S.W. 2d 836. More recent decisions support the principle that the construction of hospitals and other health projects is a proper public purpose for which public funds may be used. Stovall v. Eastern Baptist Institute, Ky., 375 S.W.2d 273 (in which it was held that the fact that some private benefits would inure from the Act did not negate its public purpose).

It should not be overlooked that there is no basis for believing that public funds will be expended for the use or benefit of a private agency anyway. If a private agency became in default on required payments so as to necessitate the use of the revenue bond guarantee fund, appropriate contractual provisions surely would preclude that agency's taking title to the property without reimbursement to the bond guarantee fund. The court will not indulge the presumption that the Authority will administer the Act in such a manner. It follows that the trial court correctly declared the Act constitutional as respects the claimed violation of Section 177, Kentucky Constitution.

■ Apart from the constitutional questions already discussed, the litigants seek an adjudication relating to the validity, vel non, of an agreement, as amended, between the Authority and the Corporation. The dispute relating to the agreement finds a realignment of adversaries. The Authority and the Corporation maintain that the Attorney General has no standing to complain about the agreement,

but even if he does, the trial court's declaration should be affirmed. Greer contends that proper interpretation of the statute requires that certain provisions of the agreement, as amended, be held invalid. The Attorney General contends that the agreement is too vague to be enforceable, and is illegal for other reasons.

On its own motion, this court heard oral argument as to whether the agreement, as amended, created legally enforceable rights or duties sufficient to warrant the exercise of judicial action in a declaratory-judgment proceeding. KRS Chapter 418. This action of the court was prompted by the statements in briefs for the Authority and the Corporation that the agreement was not meant to be final or legally enforceable. Rather, say the Authority and the Corporation, they merely intended to set down a "plan of action." In response to assertions by the Attorney General that certain details were lacking in the agreement, the Authority and the Corporation took refuge in the expression that such details would be supplied in later agreements. It appears to the court that the time for judicial action will be when, and if, such later agreements are presented for construction. It would be futile for the court to make pronouncements purporting to interpret an admittedly nonfinal, nonenforceable "agreement." Neither should the court render a declaratory judgment in the absence of an actual controversy. KRS 418.040. The provisions of KRS 418.045, respecting the right of any person interested in a contract to have a declaratory judgment, relate to a binding contract, not a mere "plan of action." KRS 418.065 provides that the court may refuse to exercise the power to declare rights in any case in which such decision would not terminate the uncertainty or controversy which gave rise to the action. The same statute permits the court to decline making a declaration of rights if such action is not necessary or proper "at the time under all the circumstances." The court considers this proceeding to be in such posture now insofar as concerns any declaratory judgment pertaining to any phase of the "agreement," as amended. See Morrow v. City of Louisville, Ky., 249 S.W.2d 721; City of Covington v. Sohio Petroleum Company, Ky., 279 S.W.2d 746; City of Corbin v. Johnson, Ky., 316 S.W.2d 217; and Ayotte v. City of Danville, Ky., 411 S.W.2d 929.

It should be plainly understood that the court, in declining to approve a declaration of rights respecting the "agreement," does not intend to imply any point of view with respect to the legality of any of the procedures outlined in the "agreement," as amended, as to steps which the Authority and the Corporation may conclude to take in the future.

The judgment is affirmed insofar as it upholds the constitutionality of KRS 216.-800 through KRS 216.853 as being nonviolative of Sections 51 and 177 of the Kentucky Constitution. In all other respects, the judgment is reversed with directions to enter a new judgment conforming to the opinion.

All concur.