**POLICE PROTECTIVE ASSOCIATION OF CASPER, Wyoming, Appellant (Plaintiff below),**

v.

**The CITY OF CASPER, Appellee (Defendant below).**

**No. 4789.**

Supreme Court of Wyoming.

March 9, 1978.

W. W. Reeves, Cardine, Vlastos & Reeves, Casper, for appellant.

H. B. Harden, Jr., Casper, for appellee.

Wyoming Education Association, by its attorneys, Graves & Hacker, Cheyenne, filed amicus curiae brief.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

This appeal from a declaratory judgment concerns the construction and validity of a collective-bargaining agreement voluntarily entered into by the City of Casper and the Police Protective Association of Casper (hereinafter the Association). We will affirm the decision of the district court, which declares the contract between the parties null and void and of no force and effect.

The City had, for a number of years, voluntarily entered into agreements with the Association regarding the terms of employment for the City's police officers. The last of such agreements became effective on July 1, 1975, and was to continue

"until June 30, 1976, and thereafter from year to year until altered or modified by collective bargaining, or by mediation, conciliation or fact-finding."

Pursuant to renewal provisions, the Association notified the City of its desire to enter into collective bargaining for the purpose of amending the agreement in several particulars. The City's response was to the effect that it lacked authority to enter into such a collective-bargaining agreement and refused to discuss amending the existing agreement.

On May 19, 1976, the Association filed a declaratory-judgment action, seeking a declaration that the agreement was binding and enforceable. The City answered, restating its lack of authority to enter into a collective-bargaining agreement with the Association, and further asserting its lack of authority

> "to continue an agreement from year to year to be modified only by collective bargaining, mediation, conciliation or fact-finding."

In declaring the agreement to be null and void and of no force and effect, the judgment of the district court stated in relevant part:

> ". ˙ . . the parties have heretofore voluntarily engaged in collective bargaining which has resulted in contracts such as that stipulated into evidence in this case; that the parties would now engage in collective bargaining if permitted to do so; that it is unlawful for The City of Casper and the Police Protective Association to voluntarily engage in collective bargaining and to make a Contract such as that in evidence in this case, and that such Contract therefore is null and void and of no force and effect."

The record and arguments on appeal disclose that we are asked to resolve

(1) whether, *under the agreement*, the City had the right to terminate its contractual relationship with the Association; and

(2) whether the City had authority to voluntarily enter into the collective-bargaining agreement in the first instance.

Our response to the first question makes it unnecessary to decide the second.

 The Association sought a declaratory judgment that the agreement was binding and enforceable, but the district court held

> "that it is unlawful for The City of Casper and the Police Protective Association to . . . make a Contract such as that in evidence in this case, . . ."

If there is any legal ground in the record to sustain that judgment, it will be affirmed. *In re Romer*, Wyo., 436 P.2d 956, 958. In this respect, we are reminded that the declaratory-judgment vehicle cannot be utilized for the purpose of obtaining an advisory opinion, and thus the issue concerning which judgment is sought must be justiciable. *Mountain West Farm Bureau Mutual Insurance Co. v. Hallmark Insurance Co.*, Wyo., 561 P.2d 706, 709. Under the facts here, the right of the City to refuse to negotiate a new or amended collective-bargaining agreement clearly structures a justiciable controversy. If we are to determine that the City has this right of refusal because of applicable law and the contract provisions—or lack of them—then it becomes unnecessary to go on and decide whether or not the City also had the authority to enter into such an agreement in the first instance. This last-mentioned inquiry may be addressed through declaratory judgment as a justiciable issue only in circumstances in which there is a controversy over the operation of the substantive aspects of an existing contract.[1] Since this type of dispute is not now before the court, we will, therefore, render no opinion as to whether the City is empowered to voluntarily enter into a collective-bargaining agreement with the Association.

Turning to the issue which is properly here for decision, we observe that several of

---

1. It is said in 26 C.J.S. Declaratory Judgments § 54, p. 151:

 "An action for declaratory relief to construe or apply a contract will not lie in the absence of an enforceable contract right, . . ."

 In *Greer v. Kentucky Health and Geriatric Authority*, C.A.Ky.1971, 467 S.W.2d 340, 343, where an agreement between the parties was not meant to be final or legally enforceable, it was said:

 ". . . It would be futile for the court to make pronouncements purporting to interpret an admittedly nonfinal, nonenforceable 'agreement.' Neither should the court render a declaratory judgment in the absence of an actual controversy. KRS 418.040. The provisions of KRS˙418.045, respecting the right of any person interested in a contract to have a declaratory judgment, relate to a binding contract, not a mere 'plan of action.' . . ."

the contract provisions are relevant. First, as noted previously, the document in question provides in Article XIX that

"This Agreement shall become effective the 1st day of July, 1975, and shall remain in force and effect until June 30, 1976, and thereafter from year to year until altered or modified by collective bargaining, or by mediation, conciliation or factfinding."

With respect to renewal and amendments to the agreement, Article XVII provides that:

"Either party desiring to amend this Agreement shall notify the other in writing, no sooner than one hundred thirty (130) days, and no less than one hundred twenty (120) days prior to the first of July of each year. Whenever notice is given, the nature of the amendments must be specified in such notice, and until satisfactory conclusion is reached in the matter of such amendments, the original provisions shall remain in full force and effect."

■ On its face, then, the agreement provides only for alteration or modification of its terms. It does not give either party the right to terminate upon reasonable notice, as do most collective-bargaining agreements. In consequence, the contract contains no limitations upon the duration of its underlying provisions. This condition of things calls into question the ability of a municipal corporation to contractually bind itself in perpetuity. It is said in 63 C.J.S. Municipal Corporations § 979b, p. 534:

"*Contracts to continue for an unlimited time, if construed to continue in perpetuo, are generally considered invalid*, although some courts have held such contracts valid in the absence of any constitutional limitations. *Contracts for an indefinite time are sustained where construed as continuing in force only at the will of the parties* or for a reasonable time only, and in some jurisdictions the reasonable time for which such contracts are allowed to run is determined by analogy to constitutional provisions limiting the terms of franchises." [Footnotes omitted and emphasis supplied]

In light of these rules, two conclusions are available to the court with respect to the instant agreement. First, it may be regarded as being invalid because it could properly be construed to continue in perpetuo. Second, if we were to regard the agreement as not being perpetual by its terms and were to further find that it is not susceptible to the implication of a specific period of duration, then, in such case, the agreement would be terminated at will upon the giving of reasonable notice. 17A C.J.S. Contracts § 398, pp. 478–480. According to either alternative, the agreement before the court must be held to be unenforceable.

■ The contract indicates that the parties intended it to continue "until altered or modified." Those words do not conceive of termination. "Alter" means "to change some of the elements or ingredients or details without substituting an entirely new thing or destroying the identity of the thing affected;" and "modification" similarly means "an alteration which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject-matter intact." Black's Law Dictionary (4th ed. 1968), pp. 103 and 1155. Since neither party had a right to terminate this agreement, we hold that the district court was correct in declaring the agreement null and void.

Perhaps we should add that, notwithstanding any language of the district court judgment which might appear to enlarge upon what is said here, and notwithstanding the charge contained in Justice Raper's specially concurring opinion—and in disagreement with Justice Thomas' specially concurring opinion—we restrict the majority opinion to the proposition that the contract is null and void because, by its terms, the parties did not provide for its termination and, therefore, substantive contractual issues cannot be reached.

We have heretofore said that a declaratory-judgment action will not lie unless there is an enforceable contract right—that is—the contract must be a valid agreement

before a justiciable issue concerning its provisions may be framed for declaratory-judgment purposes. Footnote 1, supra. Having held that the contract itself is null and void, we cannot then go inside its four corners to decide substantive issues therein contained. In this case, one such issue is whether or not the City may voluntarily enter into a collective-bargaining agreement with its employees. Contrary to the accusation made by Justice Raper in his specially concurring opinion, the Justices constituting the majority are not "ducking the only real issue in this case."

Our *only* reason for not considering the collective-bargaining question is because we find and hold that there is no contractual justiciable collective-bargaining issue for this court's decision, in view of the fact that we are confronted with a void contract. There being no enforceable contract rights where a contract is null and void, a justiciable issue does not, in such case, present itself.

We reject, out of hand, the implication of Justice Raper's charges that we are in any way avoiding an issue properly before this court for decision. On the other hand, we find Justice Raper's specially concurring opinion to be guilty of reaching outside the issues properly framed and necessary to orderly disposition in order to decide a proposition that is not here for decision.

Our refusal to decide the collective-bargaining question cannot be taken by anyone as an indication of how we of the majority, collectively or individually, might ultimately stand should the issue properly come before the court.

For the reasons set out herein, the judgment of the district court is affirmed.

Affirmed.

RAPER, Justice, with whom THOMAS, Justice, joins, specially concurring.

I join in the special concurrence of Justice Thomas for the reasons he has stated. The opinion of the majority, with only a glance, raises a suspicion of infirmity. The opinion of Justice Thomas lays bare its flaws.

I can concur only in the result for other reasons as well. It appears to me that the majority is ducking the only real issue in this case. The impression with which I am left is that such contracts as the one with which we are concerned in this case might be allowable and the only problem is that the particular one for consideration might only be invalid because it continues for an unlimited time. If that is the only defect, and I do not agree it is, it can be readily corrected by a new agreement with an agreed-upon definite termination date but the problem of authority to do so would still remain a mystery. The court literally leaves the parties where it found them for a de minimus reason, even if valid, and thus avoids a confrontation with the larger, only important cause for the action.

The parties want and are entitled to know whether a city is authorized to voluntarily enter into a collective-bargaining agreement with its policemen and have an explanation of the reasons. The question is one of universal interest throughout the State of Wyoming; other political subdivisions and their employees, besides cities, and their employees, are concerned. The Wyoming Education Association has filed an amicus curiae brief in this case in support of the Police Protective Association, indicating the interest of that substantial segment of government employees.

It is true that this court will not generally discuss or pass upon questions not necessary to the disposition of the case before it. That is particularly true in cases of reversal. 5 C.J.S. Appeal and Error § 1455, pp. 593–627; 5 Am.Jur.2d., Appeal and Error § 760, pp. 201–202. It is not so true where the court affirms, as here. The questions presented for issue before this court fall squarely within the exact terms of the Uniform Declaratory Judgments Act, § 1–1052, W.S.1957, thereof, providing:

"Any person interested under a deed, will, *written contract* or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, *con-*

tract or franchise, *may have determined any question of construction or validity* arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder." (Emphasis added.)

It is the design of the Uniform Declaratory Judgments Act (§§ 1–1049, et seq., W.S. 1957) to erase uncertainties and fully settle cases, such as the one before us. Section 1–1062 is implicit in that regard:

"This act [§§ 1–1049 to 1–1064] is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered."

The parties are being sent away empty-handed, contrary to policy.

Begrudging availability of the Declaratory Judgments Act is inconsistent with the remedial tenor expressed in the Act, directed to the elimination of uncertainty and insecurity and settlement of controversy. *Brimmer v. Thomson,* Wyo.1974, 521 P.2d 574, quoting favorably from *Planned Parenthood Center of Tucson, Inc. v. Marks,* 1972, 17 Ariz.App. 308, 497 P.2d 534, 538. When this court fails to grant the real relief requested, it is ignoring the thrust of the Declaratory Judgments Act. The parties will be just as uncertain about the contract as when, in good faith, they approached the court. I would respond to the only significant issue presented. The trial court found in its declaratory judgment that the parties would engage in collective bargaining, if authorized to do so. In my consideration of the issue of the authority of the City to enter into a collective-bargaining agreement, I would also hold, as the trial judge did, that it has no such authority to enter into the type agreement before us. Then, upon that basis, I would affirm. While this opinion could be and would be considerably more comprehensive, if it controlled the disposition made of this case, under the circumstances, I only touch the high points.

I have no argument with the right of public employees to organize into an association for their mutual benefit. Nor do I have, nor is there any objection to that organization, through its spokespeople, presenting its views and pressing its positions to whatever governing body is concerned and required to fix conditions of employment. That is one of the political ways in which our democratic form of representative government functions. I would further not argue that the City, or other government body, may not fix conditions of employment, responsive to discussions with the representatives of its employees. Regardless of what it is called or how it is done, employees are constantly working toward improved conditions for themselves and governing bodies are constantly working toward providing those conditions, leading to employee satisfaction and efficient government as well, but within limited financial means and powers.

The contract received into evidence by stipulation of the parties appears to be a complete collective-bargaining agreement and it so states. A summary of the agreement, article by article, is as follows:

Article 1. Recognition. The Police Protective Association is recognized as the "sole and exclusive representative for purposes of collective bargaining with respect to wages and fringe benefits for employees of the Casper Police Department who are sworn police officers". The chief of police is not included within the collective-bargaining agreement because "[t]he Association recognizes that the Chief of Police is a part of management." The Association recognized that when appointed by the city council, "the City Manager and/or his authorized representatives are the sole and exclusive bargaining agents for the City Council of the City." The article closes with the following statement, "The Association shall share equally with Management, the responsibility for applying this provision of the Agreement."

Article 2. Strikes, grievances and liaison. There shall be no strikes or lockouts. Establishes grievance procedure, with a griev-

ance committee made up of members of the Association. A grievance, alleging violation of the contract by the City by any patrol officer, a member of the Association, governed by the "Collective Labor Agreement" may be submitted to the committee. A formal procedure is provided, "If the decision of the City Manager is not considered satisfactory, the Association may inform the City of its desire to exercise its right to arbitration, in accordance with the provisions of the Uniform Arbitration Act." Reciprocal provisions are available for grievances by the City before the same committee with a right to the same arbitration. The procedures are conditions precedent to court action. At the discretion of the Association, the grievance and liaison committee may be, in whole or in part, of joint membership.

Article 3. Board of review. Establishes review procedures for disciplinary action. Made up of the chief of police, the city manager and various officers of the police department. It is empowered to call the alleged offender and material witnesses. The recommendation of the board is advisory.

Article 4. Fixes monthly base rate, longevity pay rate, education pay rate and additional pay for a corporal and investigator.

Article 5. Requires the City to budget $240.00 annually for a maximum of four police officers for combat pistol matches.

Article 6. Clothing allowance. Provides for an annual clothing allowance of $200.00 for each uniformed officer and a $500.00 fund for uniform damage.

Article 7. Legal protection. Legal defense to be at City cost for civil suits against police officers as a result of actions taken in the course of their employment.

Article 8. Annual leaves. Provides for annual leave accrual, based on years of service.

Article 9. Sick leave. Provides for sick leave at the rate of one and one-half days per month, with pay.

Article 10. Life insurance and dependent health insurance. The City is to maintain $13,000.00 per individual, with double indemnity benefits, in the event of accidental death. The City pays one-fourth of monthly dependent health insurance premium in the sum of $4.86 per month.

Article 11. Training. Each officer is required to take 20 hours per year in uncompensated off-duty training.

Article 12. Overtime. Establishes when overtime shall be paid at time and one-half.

Article 13. Court appearances. Provides for compensation for court appearances on officers' days off.

Article 14. Dues checkoff and indemnification. Requires City to make a dues payroll deduction for payment to the Association treasurer, upon request of the officer.

Article 15. Civil Service. The police department is required to adopt Civil Service regulations filed with the secretary of state. No officer may be suspended for over 30 days.

Article 16. Personnel ordinance. The police department shall adopt the personnel ordinance not in conflict with the agreement.

Article 17. Renewal clause. Provides for notification if either party desires to amend the agreement and until satisfactory conclusion is reached in the matter of such amendments, the original provisions shall remain in full force and effect.

Article 18. Embodiment of agreement. Constitutes sole and complete agreement between the parties "governing Management and the Association", arrived at pursuant to collective bargaining.

Article 19. Duration of agreement. This agreement shall become effective on the 1st day of July, 1975, and shall remain in full force and effect until June 30, 1976, and thereafter from year to year until altered or modified by collective bargaining, or by mediation, conciliation or fact finding.

The agreement is signed and acknowledged by the mayor and the city manager, for the City, and by four of its members,

for the police association. It has all the language and characteristics of a collective-bargaining agreement in a private industry. Section 27–239, W.S.1957, C. 1967, sets out as a matter of state policy a recognition of the right of labor to bargain collectively. It was made clear in *Retail Clerks Local 187 AFL–CIO v. University of Wyoming,* Wyo. 1975, 531 P.2d 884, that statutes governing labor relations between employers and employees apply only to private industry.

Only one segment of municipal employees have been authorized to engage in collective bargaining. Sections 27–265 through 27–273, W.S.1957, C. 1967, authorize paid fire-fighters of a city, town or county fire department to bargain collectively. In *State ex rel. Fire Fighters Local Number 946, I.A.F.F. v. City of Laramie,* Wyo.1968, 437 P.2d 295, the constitutionality was upheld by a judgment decision of this court. Of the four-member court, only one concurred in the published opinion; the other two concurred in the result. While the precedential value of the opinion is questionable, the opinion author did note that in the absence of the special legislation for fire-fighters just mentioned:

> " * * * [W]e might nevertheless find it necessary to join what the city calls the weight of authority, which in essence is simply a rule of statutory construction, and hold public employees do not have a right to bargain collectively. Indeed, that may even now be the situation for all public employees, except city firemen. * * * "

Justice McIntyre specifically stated that the opinion should not be construed to reach that point but the prevailing rule was recognized.

The most cited authority is the comprehensive annotation, "Union organization and activities of public employees," 31 A.L. R.2d 1142, 1170, which states, in summary, that:

> "Public employers cannot abdicate or bargain away their continuing legislative discretion and are therefore not authorized to enter into collective bargaining agreements with public employee labor unions. Constitutional and statutory provisions granting the right of private industry to bargain collectively do not confer such right on public employers and employees."

In *Board of Education of Scottsdale High School District No. 212 v. Scottsdale Education Association,* 1973, 109 Ariz. 342, 509 P.2d 612, it was held that in the absence of a public law requiring the school district to enter into a collective-bargaining agreement, such an agreement is unenforceable. The supreme court of Arizona thus set aside and vacated the opinion of the court of appeals of Arizona, under review, 1974, 17 Ariz.App. 504, 498 P.2d 578, which held that the school board had authority to enter into collective bargaining; but rather inconsistently concluded such a bargaining agreement was not binding.

The cases, with few exceptions, consistently hold that in the absence of legislative authority, a governmental body may not enter into a collective-bargaining agreement with its employees. Examples of such cases are: *State Board of Regents v. United Packing House Food and Allied Workers, Local No. 1258,* Iowa 1970, 175 N.W.2d 110; *International Union of Operating Engineers, Local Union No. 321 (AFL–CIO) v. Water Works Board of City of Birmingham,* 1964, 276 Ala. 462, 163 So.2d 619; *International Longshoremen's Association, AFL– CIO v. Georgia Ports Authority,* 1962, 217 Ga. 712, 124 S.E.2d 733, cert. den. 370 U.S. 922, 82 S.Ct. 1561, 8 L.Ed.2d 503. A grant to public employees of full collective-bargaining rights must be deliberately expressed and is not to be implied. *State Board of Regents v. United Packing House Food and Allied Workers, Local No. 1258,* supra; *Delaware River and Bay Authority v. International Organization of Masters, Mates & Pilots,* 1965, 45 N.J. 138, 211 A.2d 789. See also the multitude of cases cited within the above cases, used to support the conclusions there reached.

Within those cases, we see the reason frequently referred to for such a holding to be that the employer-employee relationship in government is a legislative matter, which

may not be delegated. Such contracts, if permitted to stand, would take away from the municipality its legislative control and exert it in an unelected and uncontrolled private organization. The whole matter of qualifications, tenure and working conditions for public service involves the exercise of legislative powers, delegated to the governing body and none of those responsibilities may be bargained away. Such bargaining would usurp those legislative powers, which cannot be contracted away. By way of example is the provision of the agreement here, requiring submission to arbitration, which would take from the city council its right to completely control its employees by permitting others to settle differences.

Quite a number of states have specific legislation permitting collective bargaining between governing bodies and employees. Such legislation must carefully spell out the rules and limitations of the bargaining obligations. See the scope of legislation enacted in other states with respect to collective bargaining, State and Local Employees, 181 Business Organizations, Kheel, Labor Law, Chapter 54, p. 54–1, where all legislation throughout the United States is carefully cataloged. Uniformity of treatment of all employees, not only those represented by a union, budget considerations and their timeliness, limits on the extent to which an agreement may go, retention of the political prerogatives of elected officials, assurances of continued government operation and many other factors must be covered in the government-employee relationship. Such authority must also be squared with Wyoming's right-to-work law, §§ 27–245.1 through 27–245.8, W.S.1957, C. 1967. For us to approve collective bargaining would be to legislate.

The last statement becomes particularly pertinent when we see that the legislature has already spoken with respect to the bargaining rights of firemen. Municipalities and other political subdivisions are crea-tures of the State and they only have such powers as are bestowed by the State. *Schoeller v. Board of County Commissioners of County of Park,* Wyo.1977, 568 P.2d 869. The simple application of well-known principles of statutory construction points to this being a legislative, not a judicial problem.

By the legislature's authorizing collective bargaining for firemen, it has excluded collective bargaining by other classifications of municipal and county employees. The rule is that the expression of one thing is the exclusion of another. *Town of Pine Bluffs v. State Board of Equalization,* 1958, 79 Wyo. 262, 333 P.2d 700. That rule serves to discover the intent of the legislature. *Ramsay Motor Company v. Wilson,* 1934, 47 Wyo. 54, 30 P.2d 482, 91 A.L.R. 908. Its intent is, therefore, not to allow collective bargaining except as specifically authorized.

I would face up to the genuine issue in this case and hold that the City has no authority to enter into collective bargaining with any employees except firemen. Such a contract is void ab initio and there is no need to examine its term or any other particular provision.

THOMAS, Justice, specially concurring, with whom RAPER, Justice, joins.

I concur in the result in this case, but I cannot agree with the grounds for disposition reflected in the majority opinion.

The opinion of the Court treats this agreement as void because the term of the agreement is *construed* as being perpetual. There is no express language in the agreement stating that it was to be in force in perpetuity. Relying upon the general presumption that the parties intend the contract to be legal and binding, and the rule that if susceptible to alternative constructions it should be afforded the one that will result in its being valid and enforceable,[1] I

---

1. *City of Orlando v. Murphy,* 84 F.2d 531 (5th Cir. 1936), cert. den. 229 U.S. 580, 57 S.Ct. 45, 81 L.Ed. 427 (1936); *Bullock County v. Sherlock,* 242 Ala. 262, 5 So.2d 800 (1942); *City of*

*Los Angeles v. Superior Court,* 51 Cal.2d 423, 333 P.2d 745 (1959); *Mt. Lebanon Tp. v. Metropolitan Casualty Ins. Co.,* 106 Pa.Super. 209, 161 A. 632 (1932); *City of El Campo v. South*

would construe this agreement as being one for a reasonable period. This is one of the possible constructions indicated in the following language which is quoted in the Court's opinion with only the emphasis being changed:

> "Contracts to continue for an unlimited time, if construed to continue in perpetuo, are generally considered invalid, although courts have held such contracts valid in the absence of any constitutional limitations. *Contracts for an indefinite time are sustained where construed as continuing* in force only at the will of the parties or *for a reasonable time only,* and in some jurisdictions the reasonable time for which such contracts are allowed to run is determined by analogy to constitutional provisions limiting the terms of franchises." [Footnotes omitted and emphasis supplied] 63 C.J.S. Municipal Corporations § 979b, p. 534 (1950).

I would conclude that this contract is not void for the reason assigned in the majority opinion, but instead was intended to be in existence for a reasonable period of time. *Bullock County v. Sherlock,* 242 Ala. 262, 5 So.2d 800 (1942); and *West Caldwell v. Caldwell,* 26 N.J. 9, 138 A.2d 402 (1958).[2] I would hold further that a reasonable time had not yet run, and would be forced to dispose of the issue relating to the collective bargaining nature of this agreement. I would dispose of that issue by holding that the City of Casper, in the absence of legislative authority to do so, had no power to enter into a collective bargaining agreement with the Police Protective Association of Casper, substantially in accordance with the rules in Justice Raper's concurring opinion in which I join.

*Texas Nat. Bank,* 200 S.W.2d 252 (Tex.Civ.App. 1946). See *Walton Water Co. v. Village of Walton,* 238 N.Y. 46, 143 N.E. 786 (1924), reargument denied, 238 N.Y. 555, 144 N.E. 889 (1924); *Suburban Club of Larkfield, Inc., v. Town of Huntington,* 56 Misc.2d 715, 289 N.Y. S.2d 813 (S.Ct.1968), modified on other grounds, 30 A.D.2d 541, 291 N.Y.S.2d 1013 (1968); *Massasoit Housing Corporation v. Town of North Kingston,* 75 R.I. 211, 65 A.2d 38 (1949). See also 17 C.J.S. Contracts § 918, pp. 181 et seq., and § 586, p. 1136 (1963).

**2.** I can find no inherent barrier in the cases which would prevent the City of Casper from entering into this agreement for a reasonable time beyond the terms of office of the governing officials. I think this particularly is true in view of the contractual language which contemplates an annual review of the terms of the agreement. See *Town of Lovell v. Menhall,* Wyo., 386 P.2d 109 (1963); and *Hyde v. Board of Commissioners of Converse County,* 47 Wyo. 101, 31 P.2d 75 (1934).