In the Matter of the Application of COLONIAL BEACON OIL COMPANY, INCORPORATED, Respondent, against JAMES F. FINN, as Superintendent of Buildings of the City of Albany, N. Y., and KENNETH W. MARSH, Commissioner of Public Works, and Others, Constituting the Board of Appeals of the City of Albany under Chapter 221 of the Laws of 1921 of the State of New York, Appellants.

Third Department, November 13, 1935.

*George A. Reilly, Corporation Counsel* [*Robert E. Whalen* of counsel], for the appellants.

*Rosendale, Dugan & Haines* [*P. C. Dugan* and *John J. McManus* of counsel], for the respondent.

BLISS, J.   Under chapter 551 of the Laws of 1909, which established the bureau of buildings of the city of Albany, it is provided that a permit must be obtained from the superintendent of buildings before work may be commenced on the erection of structures within the city.   Completed plans must be submitted to the bureau of buildings and approved by the superintendent before such permit is issued.   The superintendent may grant a temporary permit for the erection of any part of a structure where plans have been presented for that portion of the same before the entire plans have been submitted.   Chapter 221 of the Laws of 1921, which amends sections 7 and 8 of chapter 551 of the Laws of 1909, gives a right of appeal from the rejection or refusal of the superintendent to approve such plans and establishes a board of appeals with jurisdiction to hear such appeal and to " make such order as in its opinion ought to be made in the premises, and to that end it shall have all the powers of the superintendent of buildings." A city ordinance passed June 3, 1929, regulates the construction and installation of tanks for the handling and storage of petroleum and petroleum products within the city of Albany.   It sets forth in detail the requirements for such tanks, including specifications for kinds and sizes of materials, type and manner of construction, capacity and location.   Tanks of over 400,000 gallons storage capacity must be erected at a minimum distance of 175 feet from the adjoining property line.

The respondent owns twenty-six acres of land in the southern part of the city of Albany upon which are erected seven tanks for the storage of petroleum products.   On August 21, 1934, it filed with the superintendent of buildings of the city of Albany an application for the erection of six new tanks for the storage of gasoline and other petroleum products ranging from 1,579,200 to 2,310,000 gallons in capacity, with a total capacity of more than 10,000,000 gallons and increasing the storage capacity of the entire plant to about 14,000,000 gallons.   On October 4, 1934, the superintendent issued a temporary permit to work pending the filing of plans and specifications which were filed two days later.   It is undisputed

that these plans showed non-compliance with the minimum distance requirements of the ordinance. This temporary permit was on October 17, 1935, canceled by the superintendent on account of the extreme fire hazard involved and he forbade further prosecution of the work.

Under the statutory provisions relating thereto the respondent appealed to the board of appeals from the action of the superintendent. Hearings were held and testimony taken before this board and on March 6, 1935, the board sustained the superintendent of buildings in his revocation of the temporary permit and refusal to grant a final permit, assigning as a reason the extreme fire hazard attending the construction and use of the storage tanks applied for.

Application was then made to the Supreme Court at Special Term for a peremptory order of mandamus. This application was granted and the order of the court below commanded the superintendent of buildings to forthwith issue a rescission of his cancellation or revocation of the temporary permit and to issue a permit for the erection of the additions and improvements on respondent's property shown on the plans and drawings filed by it with him " on its filing with him plans and drawings in compliance with the provisions of the Ordinance of the City of Albany passed by the Common Council thereof June 3, 1929, with respect to the minimum distance measurements specified in section 8 thereof." The case comes to us on an appeal from this order.

A peremptory order of mandamus may be granted only to enforce a clear legal right. The mandamus issues to compel the performance of official duty clearly imposed by law, where there is no other adequate specific remedy. The duty must be positive, not discretionary, and the right to its performance must be so clear as not to admit of reasonable doubt or controversy. (*Matter of Burr* v. *Voorhis*, 229 N. Y. 382.) A peremptory order of mandamus may not be indefinite. It may not leave a wide discretion as to that which is ordered to be performed. Its function is to compel the doing of a specific thing based upon a legal right. (*People ex rel. Delaney* v. *Interborough Rapid Transit Co.*, 192 App. Div. 450.) Concededly in the instant case the plans of respondent did not comply with the minimum distance requirements of the city ordinance for petroleum products storage tanks of the capacity here involved. Consequently the respondent was not entitled to a permit for the erection of these tanks. The court below recognized this fact for its very order was conditioned upon the respondent's filing a new set of plans complying with the provisions of the ordinance with respect to the minimum distance measurements. It appears upon the face of the order itself that there yet remained to be done by respondent the

filing of plans which would comply with the ordinance. The order directs the appellants to approve plans not on file. Such plans, when filed, may fail to comply with the building code or ordinances in respects other than the minimum distance requirements. The condition contained in the order negatives respondent's right to the order. The respondent did not have a clear legal right to the relief granted. " The office of a mandamus is not to compel action by the building department in advance of the preparation and adoption of proper plans, but only to compel action when plans affording no legitimate ground of objection have been arbitrarily or unreasonably condemned." (*Matter of Hartman* v. *Collins*, 106 App. Div. 11.)

It is argued that the only reason assigned by the superintendent of buildings and the board of appeals for the revocation of the temporary permit and the refusal of the permanent permit was the extreme fire hazard and that no mention was made of the failure to comply with the minimum distance requirements. Even so, this did not give the respondent the right to a permit. The result was correct although the reason assigned was erroneous. Respondent also claims a vested right under the temporary permit. A permit granted in violation of the ordinance vested no rights in the respondent. (*Rollins* v. *Armstrong*, 226 App. Div. 687, 752; affd., 251 N. Y. 349.)

For the reasons before assigned the order below must be reversed and the application denied. We do not pass upon other questions raised such as the sufficiency of the reasons given by the superintendent of buildings and the board of appeals for their determinations and the constitutionality of the ordinance of December 1, 1930, referred to in the opinion below. As the situation stands in this case, the respondent had filed plans which showed a non-compliance with the city ordinance. It was not entitled to the issuance of any permit and the learned Special Term could not grant a conditional peremptory order of mandamus.

The order should be reversed and the petition dismissed, with fifty dollars costs and disbursements.

RHODES and CRAPSER, JJ., concur; HILL, P. J., dissents, with an opinion, in which HEFFERNAN, J., concurs.

HILL, P. J. (dissenting). The superintendent of buildings and the board of appeals of the city of Albany appeal from an order of mandamus made at a Special Term of the Supreme Court which directs the board " to forthwith convene and resolve that the rescission of said permit dated October 4, 1934, be forthwith revoked and that a permit be issued to " respondent for the erection of additional gasoline tanks on its property in the city of Albany in accordance with plans, etc., filed.

Respondent is the owner of about twenty-six acres of land in the city of Albany. It is bounded on the south by the southerly boundary line of the city, on the east by lands of the New York Central Railroad Company, on the north by lands of the Delaware and Hudson Railroad Company, and on the west by a State highway. Seven tanks used for the storage of gasoline are now located on the tract. Permits to locate these tanks were given by the city. Desiring additional storage facilities, respondent in August, 1934, filed a request with the superintendent of buildings asking permission to build additional tanks. This was accompanied by the necessary drawings, plans and specifications. On October 4, 1934, a permit in the following form was granted: " This permit must remain posted in a conspicuous place on premises while work is in progress. This permit expires by limitation within one year from the time of issuance.

" DEPARTMENT OF PUBLIC SAFETY,
    BUREAU OF BUILDINGS,
   OFFICE OF SUPERINTENDENT.

" No. 44643.                     ALBANY, *Oct.* 4. 1934.
" This is to Certify, That the detailed statement in writing required by the Building Code, together with the copies of the specifications and plans for the erection, construction, alterations, and repairs of a certain building, or part of a building at

SOUTH PEARL ST.

for temporary permit to work pending filing of plans and specifications

COLONIAL BEACON CO.

have been examined and are in accordance with the provisions and requirements of ' The Building Code ' ordinance of the City of Albany, passed June 21, 1909, relating to the construction, equipment, alteration, repair or removal of buildings or structures in said City.

" Permission is, Therefore Hereby Granted, to proceed with and complete the work as set forth in said specifications, plans or statement now on file in this Bureau. Any amendments made to original plan and specification must first be submitted for approval.

                          " JAMES F. FINN,
                   " *Superintendent, Bureau of Buildings.*"

Appellant does not controvert the following portion of respondent's petition: " That on receipt of the said permit on October 4, 1934, your petitioner proceeded at once with the work of making such additions and improvements; entered into contracts therefor

and incurred large obligation and great expense in connection therewith. On or about October 7, 1934, the said Superintendent of Buildings notified your petitioner in writing that the permit above set forth had been rescinded, and the reason assigned therefor was 'indefinite situation regarding water,' and this objection was shortly thereafter satisfied and withdrawn, and your petitioner continued in the work for which said permit had been issued to it until October 17, 1934, when your petitioner was served with a notice from said Superintendent that he had cancelled the said permit, and the reason assigned was 'owing to the extreme fire hazard,' and thereupon your petitioner was forbidden by said Superintendent from further proceeding with the work for said additions and improvements, notwithstanding your petitioner had entered upon the work aforesaid under the said permit and incurred large expense and contract obligations on account thereof on the faith of the said permit."

The common council on June 3, 1929, passed " An Ordinance regulating the construction, installation and maintenance of tanks, apparatus and appliances for the handling and storage of petroleum and petroleum by-products in the City of Albany."

Therein it was enacted: " That all above-ground tanks used in connection with oil developments, refineries, distributing stations and manufacturing plants, and all above-ground tanks used for storage of petroleum or any of its by-products within the City of Albany, be constructed of all steel of substantial vapor-tight construction, adequately grounded and suitably vented, and that all above-ground tanks carrying gasoline or other inflammable liquids in quantities greater than 3,000 gallons shall be equipped with two separate and distinct systems of fire protection, namely, a connected-up system for foam, foamite or other approved system acceptable to the Chief of the Bureau of Fire, and a water line connected on the outside of each tank and terminating in a perforated pipe at the highest point of the roof of each tank, with valve controlling same at each tank. Diameter of pipe to be sufficient to furnish a water curtain for tank."

Chapter 221 of the Laws of 1921 amended chapter 551 of the Laws of 1909, " An act creating a bureau of buildings in the city of Albany." The amendment was adopted by the city. It created a " board of appeals " consisting of " the commissioner of public works, who shall be chairman, the commissioner of public safety, the corporation counsel, an architect and a practical builder. Said last two named to be appointed by and serve during pleasure of the mayor."

The conditions under which an appeal may be taken are recited: " Whenever the superintendent of buildings shall reject or refuse

to approve any plan or specification for or the mode or manner of construction proposed to be used in the erection, construction or alteration of any building or structure, or when it is claimed that the provisions of the building code or the provisions of any law or ordinance relative to the erection, construction or alteration of buildings or other structures do not apply, or when it is claimed that the true intent and meaning of said code, laws or ordinances have been misconstrued or improperly interpreted, the owner, or any person aggrieved, or any officer, department, board or bureau of the city may appeal as hereinafter provided."

The powers of the board are detailed: " The board of appeals is hereby authorized and empowered to sustain or reject such appeal, wholly or partially, or may modify the decision of the superintendent of buildings, and shall make such order as in its opinion ought to be made in the premises, and to that end it shall have all the powers of the superintendent of buildings."

Respondent after the revocation of its permit on October 17, 1934, appealed to the board of appeals. Oral testimony was taken at the hearing of the appeal. The fire chief of the city said: " There has never been any objection on my part as to the installation of the tanks or the type of the tanks, or the form of construction. That all met with my approval all the time. The type of construction meets all the requirements of service stations or distributing stations. * * * The requirements of our Code and the ordinance are met here by the company. There isn't any question about that. The only objection is the fire hazard, and all gasoline distributing stations are fire hazards."

The entire evidence given by the superintendent of buildings consisted of his answer to a single question: " Q. Mr. Finn, just a question or two. The reason for your revocation of the temporary permit, and your refusal to grant any permit to the petitioner here, was based, was it not, upon the advice of the Fire Chief that it was a fire hazard? A. Yes."

The board of appeals on March 6, 1935, made its decision: " After the said testimony was taken, and due consideration being had, the Board of Appeals by reason of the extreme fire hazard attending the construction of the tanks and the use thereof as applied for, hereby sustains the Superintendent of Buildings in the revocation of the permit heretofore made by him allowing the construction of said tanks, and in his refusal to grant a final permit covering, and for the same work set forth in permit heretofore cancelled."

The Legislature and the city council had determined to permit the storage of gasoline in the city of Albany under formulated standards and conditions. These were set up and formulated in

the statute and ordinance earlier referred to and quoted in part. Power was not given either the superintendent of buildings or the board of appeals to set up standards and conditions with which an applicant for a permit was required to comply in addition to those fixed by the Legislature and the council.

"The question of law is presented by the record whether a fit and proper applicant may be denied a junk boat license for the reasons given. If not, he has a remedy through mandamus to right the wrong which he has suffered. [Citations.] If an applicant for a license can show that he is a fit and proper person to engage in a licensed business under the provisions of the licensing statute the licensing officer may not arbitrarily impose limitations not contained in the statute upon his right to do business." (*Matter of Picone* v. *Commissioner of Licenses*, 241 N. Y. 157, 160.)

And at page 162 of the opinion it is stated: "Laws are made by the law-making power and not by administrative officers acting solely on their own ideas of sound public policy, however excellent such ideas may be."

The opinion in *Matter of Larkin Co.* v. *Schwab* (242 N. Y. 330, 335), citing and approving the *Picone* case, says: "Under some statutes license to conduct a lawful business must be granted to any applicant of good character who complies with definitely formulated conditions. Refusal to grant a permit to a qualified applicant who complies with these conditions but fails to comply with other conditions which the administrative body seeks to impose, is arbitrary as matter of law. [Citation.] The additional condition might prove of public benefit, but the licensing authority had no power to impose it."

The buildings nearest the location are outside the danger zone as fixed by the ordinance and, under the settled rules of law which I have cited, the administrative officials may not prescribe new standards; yet rules of law might yield in the face of an actual and imminent danger. It is 560 feet to the nearest building. The uncontroverted testimony of experts was to the effect that there was no danger under the construction required beyond 200 feet from the tanks. The building nearest the tanks is not discussed by the fire chief in his testimony. He does, however, discuss the location of a convent 1,362 feet away from the nearest tank and built upon an elevation 130 feet above the ground level where it is proposed to construct the tanks. As to this property, the most that the chief says is that when gasoline tanks are on fire, "there is a certain amount of heat radiation from the tanks and from that smoke, and although the Convent is above it there is plenty of foliage on the side hill leading to the Convent, and that heat radiation will become

great enough to set the grass going, or the tree tops going, and there is no question but what they would be compelled to vacate the Convent."

The respondent purchased this rather large tract of land within the city to permit the storage of gasoline near the head of navigation on the Hudson river. The city in the past approved of this use, and several storage tanks are already installed. If gasoline stored in tanks constructed as required by the city is a fire hazard, it already exists at this location through the tanks now upon the land. The increase by additional storage is negligible. Further, the unreasonableness of the refusal is shown through the fact that upon land a half to three-quarters of a mile northerly from respondent's location and that much nearer to the built-up portion of the city of Albany, two of the other great oil companies each have located a group of tanks containing several times the amount of gasoline which respondent will be able to store even with the new facilities.

When the respondent entered upon the construction of the tanks pursuant to the permit, it acquired a vested right, and even the common council may not deprive it of that right. (*City of Buffalo* v. *Chadeayne*, 134 N. Y. 163.) Cogent legal argument could be made that the permits for the tanks already located committed, not only the appellant administrative officials, but the city council to respondent's right to use the land for gasoline storage under standardized specifications of tank construction.

After the decision, an affidavit in opposition to the petition filed by respondent asking for the mandamus order appealed from, set up on behalf of the appellants a new ground upon which it is argued the decision of the board of appeals may be sustained. This affidavit is made by Finn, the superintendent of buildings of the city, and while at the hearing before the board of appeals he raised no objection to the plan as not being in accordance with the ordinance of the city, he says that he has now discovered that some of the proposed tanks are not located " 175 feet from the adjoining property lines." No issue of that kind was presented before the board of appeals. The Special Term, however, to cover any uncertainty which might possibly exist, provided in the order that the tanks should be placed so as to overcome the new objection, if there was any deviation from the distances mentioned in the ordinance.

The order should be affirmed, with costs.

HEFFERNAN, J., concurs.

Order reversed on the law and petition dismissed, with fifty dollars costs and disbursements.