■ In the Matter of APOSTLE RAPESS et al., Respondents, v JUAN ORTIZ, as Personnel Director of the City of New York, et al., Appellants. — Order entered February 25, 1982 in Supreme Court, New York County (Richard L. Price, J.) which, *inter alia,* directed "a trial on the issue of laches and, if necessary, on the merits", reversed, on the law, and the motion to dismiss is granted, without costs. Petitioners are New York City Transit Authority policemen who would rather be New York City Police Department officers. Their CPLR article 78 petition alleges that they took the competitive civil service examination expressly for appointment to the police department, their names thereafter appeared as candidates on the "Eligibility List for Examination Number: 8155" and they each passed all of the requisite physical, psychological and medical exams. Petitioners had thus completed all preliminary requirements and were but awaiting word of their appointment to the

department when a Federal court, pursuant to a discrimination lawsuit, imposed hiring guidelines upon the police department. The city responded by establishing a minority ratio system of hiring, and subsequently a class of candidates was appointed off the eligibility list according to the terms of the ratio system. This left petitioners in an uncertain state as to whether eligibility list No. 8155 would continue to be used and hence, whether their candidacies were still viable. About this time, November of 1980, all but one of the petitioners each received a letter or a phone call from agents of respondent New York City Transit Authority offering them a position with the transit police and advising that no further appointments would be made to the New York City Police Department from list No..8155. (One petitioner alleges that, in a conversation he had with a police investigating officer, he was told the same thing and advised to go for the transit position.) All of the petitioners were sworn in as transit police officers on December 1, 1980, and a week later the Mayor announced that several hundred additional policemen would be hired over the course of the first half of 1981. In fact, the department did hire 278 candidates on January 26 and an additional 600 candidates on July 13, 1981. Petitioners were well aware (having been informed by the notice of the examination prior to even taking it) that their acceptance of the transit authority appointments meant that their names were automatically removed from the list, and they could no longer be considered for appointment to the department. As far as appears, none of them protested this procedure or in any way tried to be reinstated to the list following the Mayor's announcement and the subsequent appointments in January, 1981. Instead, petitioners filed an article 78 petition on October. 2, 1981 alleging that they were fraudulently induced into the transit police force and demanding that they be appointed to the New York City Police Department. Respondents cross-moved to dismiss the petition for failure to state a cause of action and for failure to bring the petition within the four-month period required by CPLR 217. Clearly the motion should have been granted on both these grounds. Petitioners argue that their petition is in the nature of mandamus such that the four-month Statute of Limitations period does not commence until a "demand" has been made, and their petition is the demand. Although it is true that a petition may be deemed a demand (*Matter of Central School Dist. No. 2 v New York State Teachers Retirement System*, 46 Misc 2d 225, 229, affd on other grounds 23 NY2d 213), nonetheless "the demand must be made within a reasonable him after the right to make the demand occurs or * * * where the petitioner has been misled by the respondent's conduct, within a reasonable time after he becomes aware of the facts which give rise to his right of relief." (*Matter of Devens v Gokey,* 12 AD2d 135, 136-137, affd 10 NY2d 898 [quoted in *Matter of Central School Dist. No. 2 v New York State Teachers Retirement System, supra,* p 229].) Assuming that petitioners' right to make a demand arose on January 26, 1981, when 278 candidates were hired (and not on December 1, 1980, when the Mayor announced that further appointments *would* be made), that still only allowed petitioners eight months (four months to make their demand and four months to bring the petition), or until September 26, 1981. This petition is out of time. (*Matter of Devens v Gokey, supra,* and cases cited therein.) Petitioners argue that the wrong here is a continuing one and thus they had at least until four months after the July, 1981 appointment to make their demand, citing *Matter of Walsh v Police Comr.* (159 NYS2d 6 [per McGivern, J.]). The facts in this matter distinguish the holding in that case, however. Had petitioners not voluntarily removed themselves from list No. 8155 by accepting Transit Authority positions, there might be some force to an analogy to Walsh, who was deliberately passed over three times without any explanation for his being deemed unsatisfactory. This is not such a case,

however. Petitioners point to *no* action of the police department proper in the alleged fraudulent inducement, but only point to solicitations from Transit Authority personnel (and in one case, the mere opinion of a police department investigator, given without any assertion of apparent authority). As such, the allegations make out neither a continuing wrong nor, so far as we can see, *any* wrong on the part of either the police department or the city, generally. Since the relief sought is so specifically aimed at having these respondents (as opposed to respondent Transit Authority) act, and since these respondents did not act at all, much less arbitrarily or capriciously, the petition should also have been dismissed on the merits, i.e., for failure to state a cause of action. Lastly, we note that while petitioners obviously prefer police department appointments over their present jobs with the Transit Authority force, it is difficult to see what tangible harm they have suffered. Pay, pension and benefits are comparable among the two forces, with even the uniforms being of the same hue. Whatever perceived difference in status motivates them is insufficient, in equity, to outweigh the extreme prejudice the Transit Authority would suffer in losing 24 patrolmen who have already been through five months of training. In fact, the equities just point up the sensibleness of the four-month Statute of Limitations and support respondent's further argument of laches. Concur — Ross, Carro, Fein and Kassal, JJ.

Murphy, P. J., dissents in a memorandum as follows: As the majority memorandum notes, this is a CPLR article 78 proceeding in the nature of mandamus. The law in this area has been succinctly stated in *Matter of Colonial Beacon Oil Co. v Finn* (245 App Div 459, 461, affd 270 NY 591): "A peremptory order of mandamus may be granted only to enforce a clear legal right. The mandamus issues to compel the performance of official duty clearly imposed by law, where there is no other adequate specific remedy. The duty must be positive, not discretionary, and the right to its performance must be so clear as not to admit of reasonable doubt or controversy. (*Matter of Burr* v. *Voorhis*, 229 N.Y. 382.) A peremptory order of mandamus may not be indefinite. It may not leave a wide discretion as to that which is ordered to be performed. Its function is to compel the doing of a specific thing based upon a legal right. (*People ex rel. Delaney* v. *Interborough Rapid Transit Co.*, 192 App. Div. 450.)" Upon respondents' motion to dismiss for failure to state a cause of action, the averments in the petition must be accepted as true. These averments, if established by appropriate proof, would warrant the issuance of an order of mandamus. Specifically, the petitioners charge that respondents knew that further appointments to the New York City Police Department (N.Y.C.P.D.) would be made from list No. 8155 at the time that respondents' officers informed them that the list was about to expire. Petitioners allege that they were deliberately misled into choosing the Transit Authority Police Department (T.A.P.D.) so that respondents could select additional minority candidates with lower test scores for N.Y.C.P.D. Petitioners maintain that their civil service rights under section 6 of article V of the New York State Constitution and section 50 of the Civil Service Law have been violated. They ask this court to rectify the wrong which they have suffered by directing their transfer from the T.A.P.D. to the N.Y.C.P.D. At question is not the validity of the Federal compromise that permitted the ratio hiring of minorities from this list. At issue are the tactics employed by the respondents in attempting to honor the Federal compromise. Even if it were assumed that the Federal compromise permitted respondents to select minorities with lower test scores than those of petitioners, the subterfuge allegedly employed by respondents gave preferential treatment to many nonminorities with test scores lower than petitioners' scores. Section 6 of article V of the New York Constitution opens with the following language: "Appointments and promotions in the civil

service of the state and all of the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive". This constitutional provision is implemented by the following portions of sections 50 and 61 of the Civil Service Law: "§ 50. Examinations generally. 1. Positions subject to competitive examinations. The merit and fitness of applicants for positions which are classified in the competitive class shall be ascertained by such examinations as may be prescribed by the state civil service department or the municipal commission having jurisdiction". "§ 61. Appointment and promotion. 1. Appointment or promotion from eligible lists. Appointment or promotion from an eligible list to a position in the competitive class shall be made by the selection of one of the three persons certified by the appropriate civil service commission as standing highest on such eligible list who are willing to accept such appointment or promotion". In asserting a violation of the above-cited sections, petitioners do not allege that respondents' officers, who notified the petitioners, acted without authorization (see 21 NY Jur, Estoppel, § 81, p 118). Petitioners maintain that the officers, at the direction and behest of the respondents, carried forth a hiring policy in direct violation of the civil service hiring law. A violation at this administrative level would justify the extraordinary relief provided by mandamus. The arguments raised by respondents for dismissing the petition for legal insufficiency are meritless. The first argument is apparently advanced by respondents upon the assumption that they violated the "merit and fitness" provisions in the civil service area. Essentially, respondents contend that officers in the T.A.P.D. have substantially similar benefits and conditions of employment as their counterparts in the N.Y.C.P.D. Hence, respondents maintain that petitioners have not been injured. The petitioners have alleged more than a violation of a technical right; their injury is not *de minimis*. While some candidates on the list might have preferred service with the T.A.P.D., the petitioners did and do prefer service with the N.Y.C.P.D. Because of their superior position on the list, petitioners' preference would have been realized but for the misrepresentation of respondents and their agents. The courts should not permit administrative officers to manipulate appointments from a list according to their whims of a particular moment. The civil service system is specifically aimed at preventing arbitrary conduct of this sort. Statutory provisions regulating appointments under civil service acts are mandatory and must be complied with strictly (19 NY Jur 2d, Civil Servants, § 295, p 136). If petitioners prove their case, they should be granted the requested relief (i) in order to rectify the present wrong and (ii) to signal other administrators that similar violations will not be tolerated. Respondents, as a second argument, assert that petitioners cannot compel the police commissioner to appoint them. This is not a proceeding where petitioners, in the first instance, are requesting the courts to compel an appointing authority to select their names from a list. (*Matter of Berger v Walsh*, 291 NY 220; *Matter of Delacati v Schechter*, 3 AD2d 19.) The petitioners, otherwise qualified for both the N.Y.C.P.D. and the T.A.P.D., allege that they were "hoodwinked" into accepting positions with the T.A.P.D. Again, if the petitioners prove these allegations to be true, they will have shown a clear violation of their rights under the civil service system. The courts, in the exercise of their equitable powers in this mandamus setting (*Matter of Cromarty v Leonard*, 13 AD2d 275, 287, affd 10 NY2d 915), should then direct that the respondents provide petitioners with the positions that they would have received if their rights had not been violated (cf. *Matter of Kraus v Singstad*, 275 NY 302, 311). Respondents' third point in support of a dismissal is that petitioners chose to become members of the T.A.P.D. Therefore, it is asserted that their names were properly removed from the list. This

argument totally begs the basic question presented. Petitioners' choice was neither voluntary nor intelligent if they were actively misled by respondents. The respondents also moved to dismiss the petition upon the ground that it was barred by the four-month Statute of Limitations (CPLR 217). The respondents had the burden of proving this affirmative defense (*Doyon v Bascom*, 38 AD2d 645). The petitioners were required to bring this proceeding within four months after their demand for a transfer into N.Y.C.P.D. (CPLR 217). No formal demand was made by petitioners prior to the service of the petition on October 2, 1981. The petition must thus be considered the demand for Statute of Limitations purposes (cf. *Matter of Moskowitz v La Guardia*, 183 Misc 33, 40, affd 268 App Div 918, affd 294 NY 830). Since no formal demand was made prior to the service of the petition, the more narrow issue presented is "when" should petitioners have made the demand. It is settled law that a demand must be made within a reasonable time after the right to make the demand occurs or, where a petitioner has been misled by a respondent, within a reasonable time after the petitioner becomes aware of the facts giving rise to his right of relief. If petitioner does not proceed promptly with his demand, he may be charged with laches. (*Matter of Devens v Gokey*, 12 AD2d 135, 136, 137, affd 10 NY2d 898.) On January 26, 1981, respondents hired additional individuals for the N.Y.C.P.D. from this list. There is some indication that this new hiring from the list received some coverage in the media. The respondents do not detail the nature and extent of the media coverage. From the record, it is unclear when each petitioner actually learned that these new appointments were being made. It is very possible that some of the petitioners learned of the event immediately. Others may not have learned of the new hiring until the summer months of 1981. In deciding the last date upon which a demand should have been made, a hearing should be held so that all relevant facts may be developed. If petitioners show that respondents made deliberate misrepresentations with regard to the life of the list, then petitioners must be accorded greater leeway with regard to the issue of laches. The respondents have not carried their evidentiary burden of showing that the Statute of Limitations issue may be resolved on these papers. I agree with Special Term that the petition should not be dismissed and that a full hearing should be held on the defense of Statute of Limitations. However, I would modify Special Term's order by permitting respondents to answer if they are not successful in dismissing the entire petition on that ground. The hearing court, if so advised, may permit petitioners to depose the respondents upon matters within their exclusive knowledge before the hearing is held.