(January 31, 2008)

In the Matter of SATANYA TRIANA, Appellant, v BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK et al., Respondents. [849 NYS2d 569]—

Judgment, Supreme Court, New York County (Kibbie F.

Payne, J.), entered June 6, 2006, denying the petition and dismissing the proceeding brought pursuant to CPLR article 78, unanimously reversed, on the law, without costs, the petition granted to the extent that it is declared that petitioner is a tenured employee as of June 30, 2004, the determination terminating petitioner's employment annulled and petitioner reinstated with back pay and interest.

Petitioner Satanya Triana was initially appointed as a regular substitute teacher of social studies in September 1986. From that date until September 9, 2005, a period of almost 20 years, she served as either a regular substitute teacher of social studies or a probationary teacher of "common branches," which are subjects generally taught to elementary school children. As specifically relevant to this appeal, petitioner was appointed as a probationary teacher of common branches on August 25, 2003, with a three-year probationary period. Immediately prior to such appointment, she had served in the capacity of a regular substitute teacher of social studies for eight years.

One year into her probationary period, petitioner began having problems with attendance and punctuality. Previously, she had received a written attendance policy from the school principal, and, in a letter dated October 20, 2004, she was notified by the principal that her excessive lateness for the first two months of the 2004 school year was unacceptable. The letter noted that petitioner had been late five times and absent four times during September and October 2004, and warned that a failure to improve could lead to an "Unsatisfactory" rating.

Between October 2004 and March 2005, petitioner was warned at least six additional times and had two meetings with her principal and union representative, during which she alleged that her lateness was the result of child care problems arising from the fact that the school bus was often late in picking up her children. By March 2005, petitioner had been late 24 times and absent on 13 days, within a seven month period. On June 28, 2005, petitioner received an unsatisfactory rating for the 2004-2005 school year on the basis of her poor attendance record.

By letter dated July 1, 2005, the community superintendent of the New York City Department of Education (DOE) informed petitioner that "on August 5, 2005, I will review and consider whether your services as a probationer [will] be discontinued and your license terminated as of the close of business August 5, 2005." Petitioner was further advised that she could submit a written response by July 29, 2005. After this letter was returned to DOE as unclaimed, the community superintendent sent a

second letter, dated August 15, 2005, this time including an apartment number in the address, informing petitioner that August 25, 2005 was the new date for the superintendent's consideration and decision. Petitioner submitted a response on August 23, 2005, reiterating her child care problems and requesting that the Board not terminate her services.

By letter dated September 8, 2005, the community superintendent informed petitioner that she "affirm[ed] your Discontinuance of Probationary Service and license termination effective close of business September 9, 2005." The letter further noted that petitioner had "the right to appeal this decision" within 15 days of this letter.

Petitioner filed an administrative appeal in September 2005, and filed the instant article 78 petition on December 13, 2005, challenging her termination. In the latter, petitioner sought: (1) a declaration that she had become a tenured teacher as of June 30, 2004, by estoppel; (2) a declaration that her termination was null and void, and in violation of Education Law §§ 2573 (5) and 3020-a; (3) reinstatement as a tenured teacher with full back pay and interest; and (4) payment for the lack of 30 days' notice of termination and for nine additional days for which she had been deprived of her rightful pay.

Petitioner's argument for tenure was based on the doctrine of "tenure by estoppel," which may be invoked "when a school board accepts the continued services of a teacher or administrator, but fails to take the action required by law to either grant or deny tenure prior to the expiration of the teacher's probationary term" (*Matter of McManus v Board of Educ. of Hempstead Union Free School Dist.*, 87 NY2d 183, 187 [1995]). Petitioner alleges that she acquired tenure by estoppel because she was neither granted nor denied tenure prior to the expiration of her probationary period on June 30, 2004. She asserts that, although her three-year probationary period was initially set to expire on August 25, 2006, such period was reduced by two years pursuant to Education Law § 2573 (1) (a), because she was entitled to credit for two years of service as a regular substitute teacher, which has come to be known as "Jarema credit."

In its answer, DOE argued that the proceeding was time-barred because it was commenced more than four months after DOE's determination, and that petitioner was not entitled to Jarema credit for her prior service as a substitute teacher.

The article 78 court declined to consider petitioner's tenure-by-estoppel claim and, instead, dismissed the petition on the ground that it was premature in light of petitioner's pending request for administrative review. The court also construed that

portion of the petition requesting recognition of petitioner's tenure status and reinstatement as seeking relief in the nature of mandamus to compel. The court found that mandamus to compel relief was unavailable because petitioner had failed to make a timely demand that respondents perform a duty enjoined by law prior to bringing this article 78 proceeding, and the instant proceeding could not be construed as such a demand.

Petitioner argues that the article 78 court erred in dismissing her petition as premature and in refusing to consider her claim that she had acquired tenure by estoppel. We agree with both arguments. Addressing the timing of the petition first, the court erred in finding that petitioner's filing of an administrative appeal rendered DOE's determination nonfinal. The law is well established that a decision to terminate the employment of a probationary teacher is final and binding on the date the termination becomes effective (see Matter of Frasier v Board of Educ. of City School Dist. of City of N.Y., 71 NY2d 763, 766-767 [1988]; Matter of Johnson v Board of Educ. of City of N.Y., 291 AD2d 450 [2002]; Education Law § 2573 [1] [a]), and this is true even in circumstances where administrative review is available (see Frasier at 766-767).

Here, petitioner was informed in a September 8, 2005 letter from DOE that her employment was terminated as of September 9, 2005. Thus, her commencement of this article 78 proceeding on December 13, 2005 was well within the four-month statute of limitations period and therefore timely. Contrary to DOE's argument, the record does not support its claim that petitioner was actually terminated on July 1, 2005. On the contrary, the record plainly establishes that the July 1, 2005 letter from the superintendent stated only that she would "review and consider" terminating petitioner's probationary employment as of August 5, 2005. It did not indicate that a decision to terminate petitioner had already been made.

Nor is the proceeding subject to dismissal on the ground of laches. The court's analysis hinged on its treatment of the petition as seeking mandamus to compel relief, which requires a demand and refusal by the respondent to perform a duty enjoined by law (see Austin v Board of Higher Educ. of City of N.Y., 5 NY2d 430, 442 [1959]). However, in our view, the gravamen of the petition is a challenge to DOE's determination to terminate petitioner's employment, which is more in the nature of certiorari to review. For purposes of this case, however, the distinction is immaterial because, even if the petition were properly characterized as seeking mandamus relief, the law recognizes that the petition and respondents' answer can be

construed as the necessary demand and refusal (*see Matter of Rapess v Ortiz*, 99 AD2d 413, 414 [1984]).

We now consider the tenure-by-estoppel claim for the first time, and conclude that petitioner has established her status as a tenured teacher. "The Education Law requires a probationary period of three years for a certified teacher to secure tenure (Education Law § 3014 [1])" (*Matter of Speichler v Board of Coop. Educ. Servs., Second Supervisory Dist.*, 90 NY2d 110, 113-114 [1997] [additional citations omitted]). However, the three-year probationary period can be reduced to one year through "Jarema credit," which provides that "in the case of a teacher who has rendered satisfactory service as a regular substitute for a period of two years . . . the probationary period shall be limited to one year" (Education Law § 2573 [1] [a]). The phrase "regular substitute" service is not defined in the statute, but the case law has required that such service be performed before the probationary appointment, and that it must be continuous for at least one school term (*see Speichler* at 114). There is no dispute in this case that petitioner served as a regular substitute teacher for two years prior to her probationary appointment, extending beyond one full school term, and therefore that she has satisfied the facial requirements for Jarema credit.

DOE, however, asserts an additional requirement for obtaining Jarema credit. It claims that the service as a regular substitute teacher must be in the same tenure area as that for which the teacher ultimately received a probationary appointment. Thus, DOE argues, petitioner's substitute service did not meet this test because it was in the tenure area of social studies, not common branches. DOE cites no case law discussing this requirement, but relies on the statutory language of Education Law § 2573 (1) (a), which provides: "in the case of a teacher who has rendered satisfactory service as a regular substitute for a period of two years *or as a seasonally licensed per session teacher of swimming in day schools who has served in that capacity for a period of two years and has been appointed to teach the same subject in day schools on an annual salary*, the probationary period shall be limited to one year" (emphasis added).

DOE asserts that the above-quoted language requires that the "regular substitute" service must be in "the same subject" as the probationary appointment in order to qualify the teacher for Jarema credit. In our view, this reading of the statutory language is debatable, since it could just as easily be argued that the requirement of teaching the same subject applies only

to the "seasonally licensed per session teacher of swimming in day schools."

Assuming, without deciding, that a requirement of service in the same subject exists with respect to regular substitute teachers, we reject DOE's argument that petitioner's service as a sixth-grade teacher of social studies is outside the common branches tenure area. In support of its position, DOE notes that the State Board of Regents Rules do not include social studies in the definition of common branch subjects: "any or all of the subjects usually included in the daily program of an elementary school classroom such as arithmetic, civics, visual arts, elementary science, English language, geography, history, hygiene, physical activities, practical arts, reading, music, writing, *and such other similar subjects*" (8 NYCRR 30.1 [b] [emphasis added]).

Although it is true that this section of the regulations does not expressly list social studies as one of the common branch subjects, DOE fails to discuss the catchall provision at the end. From this clause, it is clear that the list of common branch subjects in this section is not intended to be exclusive, and, in our view, social studies could easily qualify as one "such other similar subject[ ]."

In addition, section 30.4 of the same rules, titled "Tenure areas," states that "[k]indergarten . . . together with the first six grades shall constitute the elementary tenure area." This would appear to include petitioner's service as a sixth-grade social studies teacher. Further, section 30.5, titled "Elementary tenure area," provides that "[a] professional educator who is employed to devote a substantial portion of his time to classroom instruction in the common branch subjects at the kindergarten . . . level and/or in any of the first six grades shall be deemed to serve in the elementary tenure area." Thus, there is ample authority for petitioner's argument that her regular substitute service as a sixth-grade social studies teacher qualifies her for credit in either the common branch or elementary tenure areas, which in substance appear to be identical.

The case law in the area of tenure further supports the conclusion that petitioner's service as a regular substitute teacher qualifies her for Jarema credit. Indeed, the Court of Appeals has consistently made clear that "tenure rules should be read broadly in favor of the teacher and that function rather than label should control when a probationary period commences" (*Speichler*, 90 NY2d at 117). For instance, in *Speichler*, the petitioner teacher sought Jarema credit for 11 months of service as a "per diem" substitute teacher in order to establish her

claim of tenure by estoppel. BOCES, which had terminated petitioner allegedly during her probationary period, opposed her tenure claim by arguing that her service as a per diem substitute for an "indefinite" period did not constitute "regular substitute" service within the meaning of the Education Law. In reversing the Appellate Division's dismissal of the proceeding, the Court of Appeals held that a determination of the status of a substitute teacher should not depend on whether the service was for a definite or indefinite period, but rather "should be based on the substitute's actual service" (*id.* at 116).

Similarly, in *McManus* (87 NY2d at 187-188), the Court held that a school district's label "acting" principal did not negate the fact that the petitioner was performing probationary service as a principal, for which she was entitled to credit. Although *McManus* did not involve Jarema credit, which is available only to teachers, the Court found that the governing tenure principle was the same, namely, that the district was improperly denying the petitioner credit toward her probationary period by relying on a temporary label, instead of on her actual work functions.

Likewise, in *Ricca v Board of Educ. of City School Dist. of City of N.Y.* (47 NY2d 385, 391 [1979]), the Court held that "[a] school district may not avoid strict application of the statutory scheme for granting tenure to qualified and experienced teachers by the stratagem of unduly delaying formal appointment of a teacher to a position which that teacher is in fact already filling." Significantly, the *Ricca* Court further stated that, even if some of the teacher's probationary service was outside of the subject area of his appointment, it was irrelevant "because the decision of a probationary teacher to accept a temporary assignment out of position in order to accommodate the needs of the school district does not serve to disrupt that teacher's probationary period, nor may it lead to an increase in the length of that probationary period" (*id.* at 394).

We also point to additional evidence that tenure areas in this State's educational system are divided primarily by grade area, and not specific subjects, at least at the elementary school level. As noted, state rules provide that teachers of common branch subjects in grades one through six will generally be deemed to serve in the elementary tenure area (8 NYCRR 30.5), while those working in grades seven and eight will be deemed to serve in the middle grades tenure area (8 NYCRR 30.6). Thus, under the rules, tenure areas are not divided into specific subject areas until seventh or eighth grade, and only then if the instruction in core academic subjects has not been "departmentalized" (8 NYCRR 30.1 [d]; 30.6).

There is also case law supporting the general idea that tenure is based primarily on grade level, not subject area (*see Matter of Silver v Board of Educ. of W. Canada Val. Cent. School Dist., Newport*, 46 AD2d 427, 431 [1975] [petitioner's tenure area was secondary teachers, and was not limited to social studies, for purposes of seniority credit]; *Matter of Greco v Board of Educ. of Patchogue-Medford Union Free School Dist.*, 98 AD2d 721, 722-723 [1983], quoting *Matter of Cuff*, 9 Ed Dept Rep 101, 103 ["a teacher who has been transferred to a new tenure area which encompasses the same grade levels in which he taught in his former tenure area . . . does not lose any rights he had acquired before he was affected by such a transfer" (internal quotation marks omitted)]).

The facts here show that petitioner had consistently taught social studies to sixth graders for approximately 17 years prior to this probationary appointment in common branches. Moreover, she had previously been appointed as a probationary teacher of common branches for a six-year period (1989-1995), even though DOE actually assigned her to teach social studies to sixth graders during the entire time. Thus, the distinction now drawn by DOE with respect to tenure areas is one that DOE itself has not followed in the past.

Accordingly, we conclude that petitioner's service as a regular substitute teacher of sixth grade social studies qualifies her for Jarema credit, thereby bringing the expiration date of her probationary period as a teacher of common branches to June 30, 2004. Since DOE failed to grant or deny petitioner tenure before that date, she has acquired tenure by estoppel. As a tenured teacher, petitioner could not be terminated without first being subject to formal disciplinary proceedings (*see* Education Law § 3020-a; *see also* Education Law § 2573 [5]). Therefore, DOE's termination of petitioner without a hearing is annulled, petitioner is declared to have tenure in the common branches area, and she is reinstated with back pay, retroactive to September 1, 2005.

Given this holding, it is unnecessary to consider petitioner's alternative claims for pay. We take no position on whether petitioner's termination as a tenured teacher would be justified based on the allegations of poor attendance. Concur—Lippman, P.J., Marlow, Williams and Gonzalez, JJ.